**Curtis LONGSTRETH, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 91–81.

Supreme Court of Wyoming.

May 27, 1992.

Rehearing Denied June 24, 1992.

Leonard D. Munker, State Public Defender, and Maren Kay Felde (argued), Cheyenne, for appellant.

Joseph B. Meyer, Atty. Gen., Sylvia Lee Hackl, Deputy Atty. Gen., Jennifer L. Gimbel, Sr. Asst. Atty. Gen., Theodore E. Lauer, Director, Prosecution Assistance Program, and Joy J. Warren (argued), Student Intern, for appellee.

Before URBIGKIT, C.J., and THOMAS, CARDINE, MACY and GOLDEN, JJ.

CARDINE, Justice.

Appellant appeals his conviction upon one count of burglary with intent to commit arson. He claims that the evidence offered to prove the elements of burglary with intent to commit arson was insufficient.

We reverse.

Appellant raises the following issues:

1. Did the Court abuse its discretion by failing to change the venue of the case before it on the Defendant's Motion?

2. Was sufficient evidence produced at trial by the prosecutor to prove beyond a reasonable doubt all elements of the crime of burglary with intent to commit arson?

During the early morning hours of March 8, 1990, Fire Investigator Megeath received a report that a vacant house at 225 12th Street in Evanston, Wyoming was on fire. A fire truck arrived at the house. Investigator Megeath then received a report of a second fire at an unoccupied three-story apartment building on 1201 Sage. The fire at the house was put out by ten or eleven o'clock that same morning, while the fire at the apartment building was more extensive and was not extinguished until four o'clock that afternoon.

Because the fires occurred in abandoned buildings, which ruled out many of the causes of accidental fires, Investigator Megeath suspected arson. The fact that two structures were on fire simultaneously (which is rare) also led Investigator Megeath to suspect arson.

Officer Dean of the Evanston Police Department responded to the scene of the apartment fire, was informed of the suspicious nature of the fires, and proceeded to investigate further. Officer Dean saw appellant watching the house fire directly across 12th Street. When asked what he was doing, appellant said he was just watching the fire.

After further investigation, appellant was charged with two counts of felony third degree arson. Later the criminal complaint was amended, changing the charges to two counts of burglary (unlawful entry with the intent to commit the felony of third degree arson) under W.S. § 6–3–301(a). After a bench trial, appellant was found guilty of Count I, burglary with intent to commit third degree arson for the apartment fire on Sage Street. However, the district judge found appellant not guilty of Count II, the burglary with intent to commit third degree arson of the house on 12th Street. Appellant was then sentenced to a term of seven to ten years in the Wyoming State Penitentiary. A timely notice of appeal was filed.

## SUFFICIENCY OF EVIDENCE

Appellant contends that the evidence the prosecutor produced at trial was insufficient to prove beyond a reasonable doubt all of the elements of the crime of burglary with intent to commit arson. The Wyoming burglary statute contains the following elements:

A person is guilty of burglary if, *without authority,* he enters or remains in a building, occupied structure or vehicle, or separately secured or occupied portion

thereof, with intent to commit larceny or a felony therein.

W.S. 6–3–301(a) (1988) (emphasis added). Specifically appellant argues that there was not sufficient evidence to establish the entry "without authority," element of burglary.

We review appellant's claim using our standard of review for sufficiency of the evidence claims:

> Our standard for arriving at a determination of the sufficiency of the evidence is to determine whether it is adequate to support a reasonable inference of guilt beyond a reasonable doubt to be drawn by the finder of fact, viewing the evidence in the light most favorable to the State. The test is the same, whether the case was tried to the court or to a jury.

*Walter v. State*, 811 P.2d 716, 719 (Wyo. 1991) (citation omitted) (quoting *Lopez v. State*, 788 P.2d 1150, 1152 (Wyo.1990)). Examination of the record reveals that the following evidence was received on the unlawful entry or "without authority" element of burglary. Ms. Bodine, a property management agent, testified that she had arranged to look at the three-story apartment building on Sage Street as a potential renovation project. When asked to describe the condition of the building, she stated:

> I was very surprised at the good condition of the building, the generally good condition. I would have assumed with it being opened like it was, it would have been easy access to vandals or for children, and I didn't see any evidence of that. It was really relatively clean, and it wasn't badly damaged. I was very impressed with the condition of it, actually.
>
> I could see on the second floor where someone had had a small animal, probably a dog at one time, and hadn't cleaned up after that, and in one room, I saw in the window sill a—a beer bottle, and other than that, it was—it wasn't in bad condition at all.

On cross-examination Ms. Bodine was asked how she entered the apartment building:

Q. The only door you tried was the one you entered?

A. Yeah.

Q. That door was not locked?

A. No.

Q. Was there anything about that door preventing anyone from just walking in?

A. No.

The only other witness to testify as to ownership of either of the buildings was Officer Dean of the Evanston Police Department. The following exchange took place during Officer Dean's testimony:

Q. Did you ever learn during the course of your investigation whether Curtis Longstreth had been given permission by any of the owners—either of the owners of these two properties to enter the premises?

[DEFENSE COUNSEL]: Objection. Calls for a hearsay answer.

[PROSECUTION]: Asking him what he learned, Judge.

COURT: Yes. Overruled. You may answer.

A. BY THE WITNESS: Yes. I learned that he did not have permission to enter those residences, nor did anyone else have any permission to enter those residences or set any fires in there.

[PROSECUTION]: Okay. Thank you. Judge, can I have just a couple of minutes, please.

[DEFENSE COUNSEL]: Is that evidence being offered for the purpose of his understanding or for the truth of the matter?

COURT: No, it's his understanding. Not the truth of the matter.

Officer Dean's testimony was the only evidence offered by the prosecution to establish a necessary element of the crime charged, entry "without authority." It was received not for the truth of the matter asserted but only for "the officer's understanding."

▇▇▇▇ We begin by observing that hearsay evidence is not admissible, and a proper objection to hearsay should be sustained. W.R.E. 802. If it is not offered for the truth of the matter asserted, the purpose

other than the truth for which the evidence is offered must be a relevant purpose. *See United States v. Mazza,* 792 F.2d 1210, 1215 (1st Cir.1986); *United States v. Freeman,* 816 F.2d 558, 563 (10th Cir.1987); *State v. Rivera,* 139 Ariz. 409, 678 P.2d 1373, 1378 (1984). Whether the other purpose is relevant will require consideration of relevancy under both W.R.E. 401 and 403. How the officer's "understanding" is relevant to anything in this case escapes us. Nor is there any explanation or cogent argument to support a claim of relevancy. We sense that admitting hearsay evidence on the basis that it is offered for another purpose is an overused and misunderstood practice. It is done without an appreciation of the risks involved and is often done in an attempt to avoid analyzing potentially complex hearsay questions.

When evidence is admitted on an alternative basis that is not truly relevant

the inescapable inference from the testimony is that a non-testifying witness has furnished the police with evidence of the defendant's guilt, the testimony is hearsay, and the defendant's right of confrontation is defeated, not withstanding that the actual statements made by the non-testifying witness are not repeated.

*State v. Johnson,* 61 Wash.App. 539, 811 P.2d 687, 691 (1991) (citing *Postell v. State,* 398 So.2d 851, 854 (Fla.App.), *review denied* 411 So.2d 384 (Fla.1981)). In general, "[o]ut-of-court declarations made to a law enforcement officer may be admitted to demonstrate the officer's or the declarant's state of mind *only if their state of mind is relevant* to a material issue in the case; otherwise, such declarations are hearsay." *State v. Johnson,* 811 P.2d at 691 (citations omitted and emphasis added). In *Johnson,* the court relied on *State v. Lowrie,* 14 Wash.App. 408, 542 P.2d 128 in which that court reviewed testimony admitted not for the truth but only to show the resulting police action. The *Lowrie* court held that the statement was inadmissible hearsay, reasoning that "neither the making of the statement * * * nor the resultant police action was relevant to any issue in the case, except to prove the truth of the matter asserted." *Johnson,* 811 P.2d at 691

(citing *State v. Lowrie,* 14 Wash.App. 408, 542 P.2d 128 (1975), *review denied,* 86 Wash.2d 1010 (1976)).

■ We are concerned here with whether the officer's understanding, based on hearsay, that appellant did not have permission to enter the building, constitutes sufficient evidence to prove an element of a crime. We conclude it does not. When evidence is received for a purpose other than the truth of the matter asserted, we cannot infer and accept the truth of the assertion without running afoul of the hearsay rule and disavowing the limited purpose for which that evidence was received.

In discussing hearsay, *McCormick on Evidence* notes:

When the existence of knowledge is sought to be used as the basis for a further inference, the possibility of infringing upon the hearsay rule is apparent. That possibility becomes a reality when the purpose of the evidence of knowledge is to prove the existence of the fact known. Statements of memory or belief are not generally allowed as proof of the happening of the event remembered or believed, since allowing the evidence would destroy the hearsay rule.

*McCormick on Evidence* § 250 at 114 (4th ed. 1992). This court has recognized that when evidence is entered for a limited purpose such as witness credibility, its weight cannot extend beyond that limited purpose; and thus it is not substantive evidence. *Palato v. State,* 591 P.2d 891, 892 (Wyo. 1979).

The effect of this state of the record is that no evidence was offered to prove the unlawful entry element. If unlawful entry is an element essential to prove the crime charged, then the proof is fatally deficient for it is well-established that every element of a crime must be proven beyond a reasonable doubt. *See Jennings v. State,* 806 P.2d 1299, 1303 (Wyo.1991) (citing *Crozier v. State,* 723 P.2d 42 (Wyo.1986); *Dean v. State,* 668 P.2d 639 (Wyo.1983); *Longfellow v. State,* 803 P.2d 848 (Wyo.1990)).

In order to review appellant's sufficiency of evidence claim, we first examine what the phrase "without authority" means in Wyoming's burglary statute. No Wyoming cases have directly addressed this element of the burglary statute.

. In discussing burglary statutes in their treatise on criminal law, LaFave and Scott note,

> [t]he most common statutory term is "unlawfully," but some jurisdictions use other language, such as "unauthorized," by "trespass," *"without authority,"* "without consent," or "without privilege."
>
> Though these statutory formulae are not in all respects identical, they generally require that the entry be unprivileged. A more precise way of describing this situation is by excluding those entries of premises when they are open to the public or by a person licensed or privileged to enter.

2 W. LaFave & A. Scott, *Substantive Criminal Law* § 8.13 at pp. 466–67 (1986) (emphasis added and footnotes omitted). Viewing the evidence in light of this definition, we agree with appellant that the evidence offered was not sufficient to prove the unlawful entry element of the burglary statute beyond a reasonable doubt.

■ At trial and now on appeal the State argues that it is proper to prove elements with circumstantial evidence. While that may be generally true, the State did not present either direct or circumstantial evidence of unlawful entry. Despite that fundamental defect, the State would like for us to read out the unlawful entry requirement when the felony involved is arson so that all that would be required is proof that a building was burned. Once proven, the argument goes, one can infer based on the fact a fire occurred, that the defendant did not have permission to set a fire and thus unlawful entry can be inferred or assumed based on the fact of the burning alone. Accepting this proposition requires reading an element out of the statute or ignoring an element of a crime. The legislature establishes the various elements for particular crimes, and the judicial branch is to adhere to those elements, not judicially redefine a crime by ignoring statutory elements.

The other problem with the State's position is that were we to ignore the unlawful entry element of burglary when the underlying felony is arson, there would be little need for the arson statute. Rather than having separate crimes, any person who would normally be charged with arson could then be charged with burglary because the unlawful entry would always be inferred from the fire itself. A comparison of the not more than ten-year sentence for burglary with the not more than five-year sentence for third degree arson makes clear that the legislature intended that these crimes remain distinct. *See* W.S. 6–3–301(b) and W.S. 6–3–103(b).

Because burglary can be a very broad crime, it is important that the statutory restrictions on its application not be overlooked. The creation of burglary as a crime and its later statutory expansion "probably resulted from an effort to compensate for defects of the traditional law of attempt[,]" and "every burglary is by hypothesis an attempt to commit some other crime[.]" Model Penal Code and Commentaries § 221.1 at 62–63 (Official Draft and Revised Comments 1962) (1980). The legislature relied on the Model Penal Code when drafting Wyoming's Criminal Code in 1982. *See* T. Lauer, *Goodbye 3–Card Monte: The Wyoming Criminal Code of 1982*, XIX Land & Water L.Rev. 107, 111 (1984). Recognizing this, we have utilized the Model Penal Code as persuasive authority when considering provisions of our criminal code. *See Keene v. State*, 812 P.2d 147, 150 (Wyo.1991). The Model Penal Code notes:

> [A] greatly expanded burglary statute authorizes the prosecutor and the courts to treat as burglary behavior that is distinguishable from theft or attempted theft only on purely artificial grounds.

Model Penal Code and Commentaries § 221.1 at 63.

■ The unlawful entry element is a crucial element for differentiating the crime of burglary from other crimes such as arson. Illustrations from the Model Penal Code

demonstrate potential problems created by overbroad burglary statutes:

> [A] boy who broke into an automobile to steal the contents of the glove compartment would have subjected himself to imprisonment for up to 15 years, although a successful theft of the automobile itself together with its contents would have been punishable by a maximum of only 10 years. Entering a henhouse to steal a chicken became a serious offense, while stealing a chicken at the henhouse door was merely petty larceny. A person who went into an open department store and stole something from the counter would be a burglar or minor misdemeanant depending upon the largely immaterial question of whether he intended to steal when he entered the store. * * * The language of some statutes appeared to be broad enough to make a burglar out of one who entered his own house or office with the purpose of committing a crime, whether it be to prepare a fraudulent income tax return or to commit an assault upon his wife. The ultimate absurdity was the provision in some statutes making it burglary to commit an offense "in" a building, regardless of the lawfulness of the actor's entry * * *.

Model Penal Code and Commentaries § 221.1 at 64–65. The importance of the "without authority" or unlawful entry element is also demonstrated by the wording of the burglary provision in the Model Penal Code. Section 221.1(1) of the Model Penal Code provides:

> *Burglary Defined.* A person is guilty of burglary if he enters a building or occupied structure, or separately secured or occupied portion thereof, with purpose to commit a crime therein, unless the premises are at the time open to the public or the actor is licensed or privileged to enter. *It is an affirmative defense to prosecution for burglary that the building or structure was abandoned.*

*Id.,* at 60–61 (emphasis added).

Under the Model Penal Code, the testimony in this case that the apartment building was abandoned would have constituted an affirmative defense for appellant. It would indeed be ironic if we were to uphold a burglary of an abandoned building conviction when a statutory element was completely lacking and what would constitute an affirmative defense under the Model Penal Code was considered sufficient to prove an element of the burglary statute.

The State cites two cases for the proposition that it is permissible to prove unlawful entry from circumstantial evidence. The first is a case from Illinois which involved a conviction for murder, aggravated criminal sexual assault, criminal sexual assault, armed robbery, home invasion, and residential burglary. *People v. Simms*, 121 Ill.2d 259, 117 Ill.Dec. 147, 520 N.E.2d 308, 309 (1988), *sentence vacated on other grounds and cause remanded*, 143 Ill.2d 154, 157 Ill.Dec. 483, 572 N.E.2d 947, 960 (1991). In *Simms*, the defendant argued that the State did not prove home invasion and residential burglary because it did not prove that he entered without authority. 520 N.E.2d at 312. The Illinois Supreme Court however found "ample evidence to infer that the defendant's entry was unauthorized." *Id.* The court discussed in detail a great deal of circumstantial evidence that indicated the entry was unauthorized.

*Simms* is quite different from this case. In *Simms* evidence of unauthorized entry was presented for the truth of that evidence, and the evidence discussed by the court made it clear that the defendant in *Simms* had no privilege to enter the building or the victim's apartment. More evidence than the conclusion of one officer was presented in *Simms*.

The State also cites *State v. Cory*, 211 Kan. 528, 506 P.2d 1115 (1973), for the same proposition. In *Cory* direct evidence was presented of unlawful entry in the form of the owner of the jewelry store testifying and identifying marks made by bolt cutters on the iron bars covering the window of his store. 506 P.2d at 1119. The direct evidence present in *Cory* was non-existent here, and thus the cases can be distinguished.

Other jurisdictions have recognized the importance of the unlawful entry element of burglary and have reversed convictions based on lack of proof of that element. *In Interest of M.M.*, 571 So.2d 112, 113 (Fla. App.1990) (reversing conviction of attempted residential burglary for failure to prove ownership); *See also Jones v. State*, 415 So.2d 852, 853 (Fla.App.1982) (non-consensual entry is an essential element of burglary, conviction affirmed). No direct evidence of ownership or possession of the apartment building was offered. In addition, Ms. Bodine's testimony establishes that the apartment building was abandoned, unlocked, and not secured against entry by the general public. Since Officer Dean's testimony was not received for the truth of the matter, it does not even constitute circumstantial evidence that appellant did not have permission to enter the building.

Since we hold that the evidence presented was not sufficient to prove the unlawful entry element of burglary and reverse, we need not discuss appellant's remaining issue.

Reversed.