Freddie ROGERS, Appellant (Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 97–334.

Supreme Court of Wyoming.

Jan. 11, 1999.

Sylvia L. Hackl, State Public Defender; and Donna D. Domonkos, Appellate Counsel, Representing Appellant.

William U. Hill, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Georgia L. Tibbetts, Senior Assistant Attorney General; Theodore E. Lauer, Director, Prosecution Assistance Program; and John W. Childress, Student Intern, Representing Appellee.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN and TAYLOR,* JJ.

* Chief Justice at time of oral argument; retired November 2, 1998.

TAYLOR, Justice, Retired.

Found guilty on one count of aggravated vehicular homicide, appellant claims the district court erred in admitting expert testimony regarding the general effects of marijuana use. Appellant contends this testimony was either irrelevant or unfairly prejudicial in the absence of direct evidence that he was under the influence of marijuana at the time of the accident. Appellant also challenges the sufficiency of the evidence supporting his conviction. Finding no error, we affirm.

## I. ISSUES

Appellant, Freddie Rogers (Rogers), presents the following issues for review:

ISSUE I There was a clear abuse of discretion when the trial court allowed in the expert testimony of Doctor Wingeleth regarding the generalities of the effects of marijuana in violation of W.R.E. 702 and W.R.E. 401–403.

ISSUE II There was insufficient evidence to convict the appellant of aggravated vehicular homicide pursuant to W.S. 6–2–106(b)(ii).

## II. FACTS

After an all-night party on October 30, 1996, Rogers was heading north on College Drive in Cheyenne, Wyoming at approximately 7:30 a.m. According to four eyewitnesses, Rogers' white Jeep Cherokee suddenly veered across the center line straight into a Ford Escort driven by Anne Foley. Ms. Foley was pronounced dead at the scene, and Rogers was transported to the hospital for treatment of various injuries.

Approximately one and one-half hours after the accident, hospital personnel took samples of Rogers' blood at the request of a Cheyenne police officer. The blood sample was screened by the Wyoming Chemical Testing Program, and confirmatory tests were later conducted at the Chematox Laboratory in Boulder, Colorado. Rogers' blood sample tested positive for alcohol and marijuana use.

During the accident investigation, Rogers was interviewed three times by Officer Sommerfeldt of the Wyoming Highway Patrol. The first interview occurred at the hospital on the day of the accident, the second at the hospital the next day, and the third on November 19, 1996 in Officer Sommerfeldt's office. During these interviews, Rogers stated that he had not slept for twenty-four hours prior to the accident. The night before the accident, he had visited the home of friends, where he had at least one drink before driving them to a local bar. Bored by the lack of action at the bar, the group returned to the friends' home, stopping to purchase rum and coke and a 40-ounce beer on the way. Eventually, between fifteen and twenty guests arrived for the get-together. Rogers admitted he took "a couple" puffs of marijuana offered by one of the guests while at the party. Between 4:00 and 4:30 a.m., Rogers drove one of the guests to her trailer, where the two sat and talked in Rogers' Jeep for some time. Rogers then headed home, but did not complete the journey.

When asked what caused the fatal accident, Rogers initially told Officer Sommerfeldt that he was coming around a curve in the road and saw a car coming at him. To avoid a collision, he swerved to the right, leaving the paved surface. When he tried to return to his lane, he overcorrected and went into the southbound lane occupied by Ms. Foley. In a subsequent interview, Rogers altered his statement, explaining that as he came around the curve, he "envisioned" a car backing out of a driveway; he then swerved to the left into Ms. Foley's lane to avoid certain collision.

All four eyewitnesses, however, testified Rogers was not driving erratically prior to steering directly into Ms. Foley's car. Neither did anyone observe a car headed for Rogers' vehicle or entering the highway from Rogers' side of the road. The weather conditions were clear and dry at the time of the accident, and Rogers' Jeep was in good working condition. Further, there was no physical evidence on the roadside to support Rogers' claim that he had left the road prior to the accident.

Rogers was charged with one count of aggravated vehicular homicide pursuant to Wyo. Stat. § 6–2–106(b)(ii) (1997).[1] At trial, Dr. Dale Wingeleth from Chematox Laboratory stated that analyses confirmed the presence of marijuana metabolites in Rogers' blood. Dr. Wingeleth further testified concerning the general effects of marijuana in relation to the ability to drive, as well as the individual and cumulative effects of marijuana, alcohol, and lack of sleep. Rogers was found guilty by a jury and sentenced by the district court to not less than five and one-half years nor more than seven years at the Wyoming State Penitentiary. This timely appeal followed.

## III. STANDARD OF REVIEW

■ The admission or exclusion of expert testimony is a decision within the sound discretion of the district court, and its decision will not be overturned absent a showing of clear and prejudicial abuse of discretion. *Yung v. State,* 906 P.2d 1028, 1037 (Wyo. 1995).

> "Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously. *Byerly v. Madsen,* 41 Wash.App. 495, 704 P.2d 1236 (1985)."

*Vaughn v. State,* 962 P.2d 149, 151 (Wyo. 1998) (*quoting Martin v. State,* 720 P.2d 894, 897 (Wyo.1986)).

■ In reviewing sufficiency of the evidence claims, we determine whether the evidence is adequate to support a reasonable inference of guilt beyond a reasonable doubt, viewing the evidence in the light most favorable to the state. *Glazier v. State,* 843 P.2d 1200, 1203 (Wyo.1992) (*quoting Longstreth v. State,* 832 P.2d 560, 562 (Wyo.1992)).

1. Wyo. Stat. § 6–2–106 provides, in relevant part:
   (b) A person is guilty of aggravated homicide by vehicle * * * if:

## IV. DISCUSSION

Rogers contends that because the blood tests could not establish that he was under the influence of marijuana *at the time of the accident,* expert testimony explaining the effects of the drug was without foundation and "would not in the least help the trier of fact decide the issue of whether marijuana contributed to Mr. Rogers driving recklessly when the crash took place."

W.R.E. 702, the rule governing the admission of expert testimony, provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Rogers does not question Dr. Wingeleth's qualifications or the accuracy of his description of the effects of marijuana. *Sorensen v. State,* 895 P.2d 454, 457 (Wyo.1995) (*quoting Frenzel v. State,* 849 P.2d 741, 747 (Wyo. 1993)) (to be admitted, expert testimony must meet three criteria: (1) the subject matter of the testimony must be beyond the understanding of lay persons and be distinctly related to some science; (2) the expert must be sufficiently qualified to raise the inference that the testimony will assist the trier of fact; and (3) the scientific basis of the testimony must be in such a state of development so as to permit the expert to make a reasonable opinion.). Instead, Rogers argues that it must be proven that he was under the influence of marijuana at the time of the accident before Dr. Wingeleth could testify as to the effects of such intoxication. This argument, however, misapprehends the requisite foundation for the expert testimony and the role of circumstantial evidence.

Under our system, molded by the tradition of jury trial and predominantly oral proof, a party offers his evidence not *en masse* but item by item. An item of evidence, being but a single link in the chain

   * * *
   (ii) He operates or drives a vehicle in a reckless manner, and his conduct is the proximate cause of the death of another person.

of proof, need not prove conclusively the proposition for which it is offered.

1 *McCormick on Evidence,* § 185 at 776 (4th ed.1992) (footnote omitted). The evidence may be direct or circumstantial. "[C]ircumstantial evidence is not evidence of a lower order; the law makes no distinction between the weight to be given to either direct or circumstantial evidence." *John Q. Hammons, Inc. v. Poletis,* 954 P.2d 1353, 1357–58 (Wyo.1998). The question, therefore, is not whether Dr. Wingeleth had scientific evidence definitively showing the time at which Rogers was under the influence of marijuana, but whether the jury had been presented with sufficient evidence, direct or circumstantial, to render Dr. Wingeleth's testimony relevant.

In *Candelaria v. State,* 895 P.2d 434, 436 (Wyo.1995), an appellant charged with vehicular homicide challenged the admission of testimony confirming the presence of marijuana metabolites in his blood sample taken the day after the accident. We held that when offered with other evidence indicating marijuana could have impaired appellant's driving ability, evidence of the marijuana metabolites was admissible to support a conclusion that the appellant was driving his vehicle in a reckless manner. Supporting evidence that witnesses had seen appellant smoking marijuana while driving during the evening of the accident rendered the evidence of the presence of marijuana metabolites in appellant's bloodstream relevant and admissible.

Rogers concedes that the presence of metabolites in his blood may be relevant under our holding in *Candelaria.* However, he claims his case may be distinguished because: (1) the expert testimony went beyond the report of the blood results, and (2) no supporting evidence established he was under the influence of marijuana at the time of the accident. Rogers' attempts to distinguish his case from our holding in *Candelaria* are not persuasive.

■ The relevance of marijuana metabolites in Rogers' bloodstream and the effect of marijuana use is logically inseparable. When the issue is whether the defendant acted recklessly, blood test evidence showing the presence of marijuana metabolites is relevant only if the party offering the evidence can establish a reasonable inference that the effects of the drug had a role in the defendant's behavior. Thus, if the results of a blood test showing drug use is admissible, then so too is testimony relating the effects of the drug.

Contrary to Rogers' assertions, there is abundant evidence supporting a reasonable inference that Rogers' use of marijuana affected his driving ability. Rogers admitted he smoked marijuana some time between 1:00 or 1:30 a.m. He also admitted that he smoked marijuana at a time when he had not slept for many hours and had been drinking. Eyewitnesses were unable to provide any observable cause for Rogers' actions, and the excuses offered by Rogers were incredible given the lack of supporting physical evidence. Dr. Wingeleth provided the only plausible explanation of Rogers' behavior based on the facts-impairment arising from the cumulative effects of marijuana, alcohol, and sleep deprivation. We, therefore, find no error in the admission of Dr. Wingeleth's testimony.

■ We similarly reject Rogers' contention that if the evidence is relevant, its prejudicial effect unfairly outweighed its relevance. When an appellant claims that testimony was unduly prejudicial under W.R.E. 403, he "'must demonstrate that the evidence had little or no probative value and that it was extremely inflammatory or introduced for the purpose of inflaming the jury.'" *Hermreck v. State,* 956 P.2d 335, 340 (Wyo.1998) (*quoting DeWitt v. State,* 917 P.2d 1144, 1148 (Wyo.1996)). As stated above, the testimony was certainly probative. Moreover, there is no indication that the testimony was extremely inflammatory or that it tended to mislead or confuse the jury.

Dr. Wingeleth repeatedly testified that the presence of the marijuana metabolites did not establish, of itself, that Rogers was under the influence of marijuana at the time of the accident. Rogers took full advantage of the opportunity to cross-examine and establish the limits of Dr. Wingeleth's testimony.

Moreover, the State was not relying solely on the effect of marijuana to establish recklessness, but the effect of the drug in tandem with other factors such as lack of sleep and the consumption of alcohol. The district court correctly found that Dr. Wingeleth's testimony was not unfairly prejudicial.

As his final claim of error, Rogers claims there is insufficient evidence to support his conviction. Arguing that previous Wyoming decisions upholding a conviction for aggravated vehicular homicide involve behavior by appellants which is more egregious than that of Rogers, he concludes that his actions cannot be considered "reckless." The test, however, is not how Rogers' behavior compares with previous defendants, but whether a jury could reasonably conclude, viewing the evidence in the light most favorable to the State, that Rogers was driving recklessly at the time of the accident. *Glazier,* 843 P.2d at 1203 (*quoting Longstreth,* 832 P.2d at 562).

Wyo. Stat. § 6–1–104(a)(ix) (1997) defines the term recklessly:

A person acts recklessly when he consciously disregards a substantial and unjustifiable risk that the harm he is accused of causing will occur, and the harm results. The risk shall be of such nature and degree that disregarding it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation[.]

The evidence in this case shows that Rogers chose to drive his vehicle after being awake for twenty-four hours, smoking marijuana, and drinking beer and rum. The record contains no evidence that Rogers' accident was attributable to something other than sleep or loss of motor skills in controlling his vehicle. Thus, the facts presented to the jury were sufficient to support a conclusion that Rogers knew he was in no condition to drive, and that his decision to do so cost Ms. Foley her life.

## V. CONCLUSION

Given the circumstantial evidence supporting the conclusion that the effects of marijuana contributed to Rogers' behavior in causing a fatal accident, we find no abuse of discre-

tion in the admission of expert testimony establishing the presence of marijuana metabolites in Rogers' blood and the effects of that drug as it pertains to driving ability. The jury's verdict is supported by the evidence. Affirmed.