**FILED**
**JUNE 18, 2015**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 32999-2-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RICKEY LEE KITCHENS, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

FEARING, J. — Rickey Kitchens appeals from his conviction for felony driving under the influence. He argues that the trial court violated his constitutional right to a public trial when it allowed peremptory juror challenges by paper and for-cause challenges outside the hearing of the jury. He further contends that the trial court admitted testimonial hearsay in violation of his right to confront witnesses against him. Finally, Kitchens argues that, to the extent defense counsel failed to object to the testimonial hearsay, Kitchens received ineffective assistance. We agree the trial court permitted inadmissible hearsay, but conclude the admission is harmless. We reject Kitchens' other arguments and affirm his conviction.

FACTS

During the early afternoon of September 1, 2012, a Jeep Cherokee pulling a camper trailer fishtailed and flipped on four lane Washington Highway 167. The Jeep landed upside down. Many who saw the accident rushed to the Jeep to provide assistance. The rescuers encountered difficulty opening the jammed Jeep's passenger and driver doors, but the driver's side door unsealed first. The responders pulled Rickey Kitchens and Marcia Howard, in that order, from the Jeep through its upside down driver's side door. Rickey Kitchens' main defense at trial was that Howard, not him, drove the Cherokee.

Brenda Petersen, Gary Hillin, and Tiffany Stewart, among others, observed the accident. Brenda Petersen drove behind the Jeep in the other lane. From a car length away, Petersen saw the trailer veer off the road, fishtail, and flip.

Gary Hillin witnessed the accident from opposing traffic. Hillin stopped his car on the opposite shoulder parallel to where the Jeep Cherokee landed after it overturned. Hillin crossed the road to assist. He went to the driver's side door of the upside down Jeep and saw a male driver and a female occupant. Hillin and others pulled Kitchens out of the vehicle first. Upon exiting the rolled Jeep, Rickey Kitchens told Hillin that he was not driving. Gary Hillin smelled alcohol on Kitchens' breath.

Tiffany Stewart saw the Jeep and trailer fishtail and accelerate further,

2

exacerbating the fishtail. The Cherokee hit the gravel on the right-hand side of the freeway causing the trailer to flip and slingshot the Jeep over the top. Stewart stopped her vehicle, dialed 911, handed her fiancée the phone, and ran to the Jeep to help. Stewart was the third person to arrive at the vehicle. She concluded Rickey Kitchens drove the Jeep.

Two other people pulled Rickey Kitchens from the Jeep, after which Tiffany Stewart helped Kitchens to his feet. Kitchens immediately looked at Stewart and said: "I wasn't driving. She was driving." Report of Proceedings (RP) at 244. Stewart observed Kitchens swaying. Kitchens smelled profusely of alcohol. Kitchens rambled further that he did not drive and he was not drunk. Stewart politely agreed with him.

Washington State Patrol Trooper Raymond Seaburg responded to the scene. Trooper Kyle Burgess later arrived to assist Trooper Seaburg. Seaburg and Burgess distributed statement forms to witnesses. Burgess observed Rickey Kitchens as belligerent. Kitchens' eyes were bloodshot and watery, his face flushed, and his speech slurred.

At the scene, Trooper Kyle Burgess examined the relative positions of the Jeep Cherokee driver and passenger seats. He testified at trial:

> If we have two people and we're not sure which one is driving, one is tall and one is short, we should be able to look at the seat and tell who was driving just based on the positioning of the seats. In this case, Mr. Kitchens is 5 foot 11. His seat was adjusted for someone 5 foot 11. The passenger is 5 foot 6 and her seat was forward and adjusted for someone

3

shorter.

RP at 282.

## PROCEDURE

The State of Washington charged Rickey Kitchens with felony driving under the influence in violation of RCW 46.61.502(6)(a). Kitchens stipulated to four prior DUIs within the last ten years, an element of the felony. *See* RCW 46.61.5055(14)(a).

Rickey Kitchens contends on appeal that the voir dire in his case violated his right to a public trial. Therefore, we reproduce the relevant portion of the voir dire transcript:

> THE COURT: Folks, we're going to let the attorneys do their final selection here in writing. It will take a few minutes for them to do that. While they're doing that, you can talk quietly among yourselves over anything other than this case. You can't talk about this case. If you want[,] stand up and stretch, feel free to do that as well, and we'll be back to you here shortly.
> If any of you have an urgent need to use the restroom, you can use the restroom on this floor only. The same instruction applies on not talking to anybody about the case and not allowing anyone to discuss it in your presence. Use the restroom and come right back to your same seat, so the lawyers can match up your number and your face when they're doing their final selections. Okay?
> (Attorneys doing their peremptory challenges.)
> THE COURT: Counsel.
> (Sidebar held, but not reported.)

RP at 2-3. The trial court then directed jurors and alternates to sit in the jury box.

The trial court filed the written peremptory challenges that day. The filing listed Rickey Kitchens' and the State's respective peremptory challenges by jury number and

4

No. 32999-2-III
*State v. Kitchens*

name. The trial court made a record of what occurred during the unreported sidebar:

> THE COURT: We did have a discussion at sidebar regarding challenges for cause. The defense asked to excuse No. 5 and No. 18. I indicated that I believed that both of those jurors had rehabilitated themselves sufficiently so that they could remain on this case, and I denied those challenges.
> There was also an agreed challenge to Juror No.—an agreed excusal of Juror No. 29, and we excused her.
> Anything else you want to make a record of, counsel?
> [DEFENSE COUNSEL]: Not at this time, Your Honor.

RP at 138.

The critical issue at trial was whether Rickey Kitchens or Marcia Howard drove the Jeep at the time of the September 1, 2012 accident. The State called eyewitnesses Brenda Petersen, Gary Hillin, and Tiffany Stewart and Troopers Raymond Seaburg and Kyle Burgess to testify on this subject. Petersen testified, "I watched them pull a male and a female out of the vehicle." RP at 148. At trial, Petersen could not remember who was pulled out of the Jeep first. Therefore, at the request of the State, Petersen read to the jury the statement she provided the police on the day of the accident:

> The involved vehicle was in front of me and the attached trailer started to fishtail. Driver lost control and flipped. I watched another witness pull the driver out, which was the male. Female passenger was also pulled out from the driver's side, but after the male was taken out.

RP at 160. After reading her statement, Petersen testified at the questioning of the State:

> Q. Thank you, ma'am. Now, do you remember the officer asking about the certainty of who was driving the vehicle?
> A. Yes.
> Q. Do you remember responding to the officer asking you whether

5

you're 100 percent sure that the male was driving the car?
A. I do remember him asking that question.
Q. What was your response when the officer asked you that question?
A. Yes.

RP at 160.

At trial, Tiffany Stewart identified Rickey Kitchens as the vehicle's driver,

testifying:

Q. You came to the conclusion he was the driver. How did you get there?
A. Because he came out of the driver's seat in that area. I don't feel there was much of a place for him to go anywhere other than that. So he came out of the driver's seat, even though the vehicle was upside down. So he was still in that area.

RP at 242-43.

On appeal, Rickey Kitchens challenges portions of the troopers' respective testimony as testimonial hearsay. Trooper Raymond Seaburg testified that he saw twenty to thirty people assisting Rickey Kitchens and Marcia Howard after the accident. Seaburg added: "I was contacted by several witnesses at the scene. They pointed out the two occupants that they knew of that were in the vehicle that had rolled over. I walked over, contacted a male and female, and then began asking them if they were okay and what had happened." RP at 180.

Trooper Seaburg then testified at trial:

Q. Through the investigation and the process of taking statements, were you able to determine—I'm sorry. Did you have any evidence that

6

contradicted what you had learned thus far based on—

[DEFENSE COUNSEL]: Objection, calls for hearsay.

THE COURT: Overruled. He can answer that yes or no.

A. Yes.

Q. ([THE STATE]) What was your belief after conducting a further investigation after the interaction you did with the defendant and the female that were the occupants of the vehicle?

A. Through the investigation further I determined that the male was the driver.

Q. What did you do once you came to that conclusion?

A. At that point, I went back and spoke with him briefly. I told them my investigation concluded that you were the driver, and he was not in agreeance. He basically told me I had conflicting stories and that it was fucking bullshit.

Q. Were those his words, the salty language?

A. Yes.

RP at 183-84.

Trooper Seaburg testified to collecting statements from witnesses. Defense

counsel again objected:

Q. Did the information that you collected support your belief about who was driving and what happened?

[DEFENSE COUNSEL]: Objection, calls for hearsay, Your Honor.

THE COURT: Overruled. He can answer that yes or no.

A. Yes.

RP at 189.

Trooper Kyle Burgess also testified that, through his investigation, he concluded

that Rickey Kitchens drove the Jeep leading to the accident. Burgess then testified:

Q. During your course of the investigation, without saying what these individuals said, did you identify any witnesses to this incident?

A. I talked to several witnesses, including three that were excellent witnesses that we got a statement from. I don't recall if I actually gave

7

them the statement, but I know that I took the statement, read over it, and talked to them about it before they left the scene.

Q. You provided or wanted to make sure one of the troopers provided these witnesses with the forms for completing those statements; is that correct?

A. Yes, sir.

Q. Did your interaction with the witnesses assist you in determining how the accident was caused?

A. Yes, it did.

Q. Did your interactions with the witnesses assist you in determining who the driver of the vehicle was?

A. Yes, it did.

RP at 280-81. Trial defense counsel did not object to this line of questioning of Burgess.

Rickey Kitchens called Marcia Howard to testify at trial. Howard averred that she owned the Jeep and drove the Jeep on September 1, 2012. Howard testified that rescuers pulled her and Kitchens through the Jeep's passenger side door. Kitchens first escaped the rolled Jeep since he was the passenger. Rickey Kitchens did not testify at trial.

In closing arguments, the State of Washington relied on the testimony of Brenda Petersen, Gary Hillin, and Tiffany Stewart to show that Rickey Kitchens drove the Jeep. The State also pointed to Trooper Kyle Burgess' testimony regarding the relative position of the driver and passenger seats and Kitchens' statements immediately after the accident that he did not drive. During summation, the State did not mention statements from witnesses to the accident who did not testify at trial.

The jury found Rickey Kitchens guilty of felony driving under the influence.

8

LAW AND ANALYSIS

Issue 1: Whether the trial court deprived Rickey Kitchens of his public trial rights by permitting peremptory challenges by written notes and for-cause challenges by sidebar during voir dire?

Answer 1: No.

Rickey Kitchens contends the trial court violated his, and the public's, right to a public trial when the court allowed for-cause challenges at sidebar and peremptory challenges by written notes. This court, Division Three, recently approved similar processes in *State v. Love*, 176 Wn. App. 911, 309 P.3d 1209 (2013), *review granted in part*, 181 Wn.2d 1029 (2015). Division Two likewise approved the processes, adopting the reasoning of *Love*, in *State v. Dunn*, 180 Wn. App. 570, 321 P.3d 1283 (2014), *review denied*, 181 Wn.2d 1030 (2015). Finally, the state high court recently approved sidebar conferences for juror challenges. *State v. Smith*, 181 Wn.2d 508, 521, 334 P.3d 1049 (2014).

The United States Constitution's Sixth Amendment, applicable to the states through the Fourteenth Amendment due process clause, directs, in relevant part, that "in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." *In Re Oliver*, 333 U.S. 257, 273, 68 S. Ct. 499, 92 L. Ed. 682 (1948). Washington's Constitution contains two corollary provisions. Article I, section 10 of the Washington

Constitution reads, "Justice in all cases shall be administered openly, and without

unnecessary delay." This provision entitles the public and the press, as representatives of

the public, to openly administered justice. *Allied Daily Newspapers of Wash. v.*

*Eikenberry*, 121 Wn.2d 205, 209-10, 848 P.2d 1258 (1993); *Cohen v. Everett City*

*Council*, 85 Wn.2d 385, 388, 535 P.2d 801 (1975). Article I, section 22 of the

Washington Constitution provides, in pertinent part, "In criminal prosecutions the

accused shall have the right . . . to have a speedy public trial." The constitutional

principles arise from the guaranty of open judicial proceedings being a fundamental part

of Anglo-American jurisprudence since the common law. *Richmond Newspapers, Inc. v.*

*Va.*, 448 U.S. 555, 573 n.9, 100 S. Ct. 2814, 65 L. Ed. 2d 973 (1980); *Federated Publ'ns,*

*Inc. v. Kurtz*, 94 Wn.2d 51, 65, 615 P.2d 440 (1980) (Utter, C.J., concurring and

dissenting). America had a tradition of open criminal trials that preceded drafting of the

Bill of Rights. *Seattle Times Co. v. Ishikawa*, 97 Wn.2d 30, 35-36, 640 P.2d 716 (1982).

The threshold determination when addressing an alleged violation of the public

trial right is whether the proceeding at issue even implicates the right. *State v. Sublett*,

176 Wn.2d 58, 71, 292 P.3d 715 (2012). In *Sublett*, our Supreme Court adopted a two-

part "experience and logic" test to address this issue: (1) whether the place and process

historically have been open to the press and general public (experience prong), and (2)

whether the public access plays a significant positive role in the functioning of a

10

particular process in question (logic prong). 176 Wn.2d at 72-73. Both questions must be answered affirmatively to implicate the public trial right. *Sublett*, 176 Wn.2d at 73; *Dunn*, 180 Wn. App. at 574-75.

In *State v. Love*, 176 Wn. App. 911 (2013), this division applied the experience and logic test to conclude that for-cause challenges at sidebar and peremptory challenges by written notes do not implicate public trial rights. For the experience prong, the *Love* court concluded "there is no evidence suggesting that historical practices required these challenges to be made in public." 176 Wn. App. at 918. We wrote:

> Our research discloses one case in which the defense challenged the "use of secret—written—peremptory jury challenges." *State v. Thomas*, 16 Wn. App. 1, 13, 553 P.2d 1357 (1976). Discerning no prejudice to the defendant from the process, and noting that the process was used in several counties, the court rejected the argument for having "no merit." *Id.* Although suggestive that there may have been an "open" peremptory challenge process in use in other places, *Thomas* is strong evidence that peremptory challenges can be conducted in private.

*Love*, 176 Wn. App. at 918. In explaining the practical underpinnings of the historical practices discussed in *State v. Thomas*, the *Love* court noted: "Most parties, in fact, would probably rather not have a challenge for cause made in the presence of the juror in case the challenge failed and the juror might serve knowing the identity of a party that had not wanted him or her to serve." 176 Wn. App. at 918. This passage also goes far in establishing the logic prong of the public trial test.

The *Love* court also directly addressed the logic prong. The court noted the

purpose of public trial rights as "'to ensure a fair trial, to remind the officers of the court of the importance of their functions, to encourage witnesses to come forward, and to discourage perjury.'" 176 Wn. App. at 919 (quoting *State v. Brightman*, 155 Wn.2d 506, 514, 122 P.3d 150 (2005)). The *Love* court reasoned:

> Those purposes simply are not furthered by a party's actions in exercising a peremptory challenge or in seeking a cause challenge of a potential juror. The first action presents no questions of public oversight, and the second typically presents issues of law for the judge to decide. The written record of these actions—the clerk's written juror record and the court reporter's transcription of the cause challenges at sidebar—satisfies the public's interest in the case and assures that all activities were conducted aboveboard, even if not within public earshot. The alternative is to excuse all jurors from the courtroom while legal arguments take place in public concerning a juror's perceived bias. We do not believe the public trial right requires the use of two rooms in order to facilitate the defendant's challenge to some jurors for cause.

176 Wn. App. at 919-20 (footnote omitted).

Rickey Kitchens cites *State v. Wilson*, 174 Wn. App. 328, 298 P.3d 148 (2013), as reaching the opposite conclusion, and standing for the proposition that, unlike potential juror excusals governed by CrR 6.3, exercise of for-cause and peremptory challenges, governed by CrR 6.4, constitutes part of voir dire, to which the public trial right attaches. Nevertheless, *Wilson* concerned whether public trial rights extended to a bailiff's excusal of two potential jurors for illness-related reasons. 174 Wn. App. at 331. Like *Love* and *Dunn* before it, the *Wilson* court applied the experience and logic test to conclude the excusals did not implicate public trial rights. 174 Wn. App. at 347. *Wilson* undermines

neither *Love* nor *Dunn*.

In short, the public trial right does not attach to the exercise of challenges during jury selection. *State v. Dunn*, 180 Wn. App. at 575. Experience and logic do not suggest that exercising peremptory challenges at the clerk's station implicates the public trial right. *Dunn*, 180 Wn. App. at 575.

The trial transcript in Rickey Kitchens' trial shows which jurors were excused by which means. Therefore, the public has an available record of the challenges. This record satisfies the purposes behind a public trial. The process did not violate either the public's or Rickey Kitchens' public trial rights.

Issue 2: Whether the trial court erroneously admitted hearsay?

Answer 2: Yes.

Rickey Kitchens contends the trial court admitted testimonial hearsay in violation of his constitutional right to confront witnesses against him. Kitchens observes that Troopers Raymond Seaburg and Kyle Burgess interviewed as many as thirty witnesses of the accident. The State called only three of those witnesses to testify at trial, but then, citing all the interviews, the troopers testified to their conclusion that Kitchens drove the Jeep. Kitchens thus argues that the troopers incorporated into their own testimony hearsay statements from witnesses who did not testify. We agree that the testimony was inadmissible hearsay. We do not reach whether the hearsay was testimonial.

13

Washington State Troopers Raymond Seaburg and Kyle Burgess lacked percipient knowledge that Rickey Kitchens drove the Jeep Cherokee. Nevertheless, the State elicited testimony from each trooper that, after interviewing witnesses, each concluded that Kitchens drove the Cherokee. While neither trooper repeated verbatim what eyewitnesses reported, the jury could infer the content of those reports from the trooper's conclusory testimony.

"Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." ER 801(c). Unless an exception or exclusion applies, hearsay is inadmissible. ER 802. The use of hearsay impinges on a defendant's constitutional right to confront and cross-examine witnesses. *State v. Neal*, 144 Wn.2d 600, 607, 30 P.3d 1255 (2001).

The prosecution often seeks to introduce hearsay evidence surrounding a law enforcement officer's investigation of the crime through various arguments such as the evidence provides background information or the evidence informs the jury of the investigating officer's state of mind. "A statement is not hearsay if it is used only to show the effect on the listener, *without regard to the truth of the statement.*" *State v. Edwards*, 131 Wn. App. 611, 614, 128 P.3d 631 (2006) (emphasis added). Such evidence may be important in a motion to suppress hearing to justify the conduct of the officer during a search or seizure. But such evidence frequently lacks materiality in the

14

criminal trial, when the guilt of the accused, not the conduct of the officer, is at issue. Out-of-court declarations made to a law enforcement officer may be admitted to demonstrate the officer's or the declarant's state of mind only if their state of mind is relevant to a material issue in the case; otherwise, such declarations are hearsay. *State v. Johnson*, 61 Wn. App. 539, 545, 811 P.2d 687 (1991); *State v. Aaron*, 57 Wn. App. 277, 279-81, 787 P.2d 949 (1990); *State v. Stamm*, 16 Wn. App. 603, 610-12, 559 P.2d 1 (1976). Hearsay is always hearsay, but admissible hearsay, like relevance, depends on the issues in the case.

The State relies on *State v. Lillard*, 122 Wn. App. 422, 93 P.3d 969 (2004) in arguing that the state troopers' testimony was admissible to provide background to their investigation. We agree with the State that *Lillard* supports its position. Lonnie Lillard challenged the trial court's decision allowing testimony by Officer Chadd Thomas concerning his investigation of the theft ring to which Lillard belonged. Lillard objected when Thomas explained that he called customers to determine if they used stolen cards. This court upheld introduction of the evidence, reasoning that, contrary to Lillard's assertion, the State did not offer Thomas' statements to prove what the cardholders said, but to show how he conducted his investigation. We decline to follow *Lillard*, however, since this court erroneously concluded that the manner in which Thomas conducted his investigation was relevant.

15

In this appeal, the question for the jury to decide was whether Rickey Kitchens drove the Jeep Cherokee. This question needed to be resolved by direct testimony of eyewitnesses, statements of Rickey Kitchens, and observations of the troopers with regard to physical evidence at the scene, not the conclusions of the troopers' investigation based on interviewing witnesses.

Several analogous decisions compel a conclusion that the state troopers' testimony was inadmissible hearsay. In *State v. Lowrie*, 14 Wn. App. 408, 542 P.2d 128 (1975), a detective testified that an informant told him the defendant was involved in the crimes that were the subject of the prosecution. Although the trial court indicated that the testimony was not admitted for the truth of the matter asserted but only to show that the statement was made and that it in turn resulted in police action, the appellate court held the statement was inadmissible hearsay. The court reasoned that neither the making of the statement by the informant nor the resultant police action was relevant to any issue in the case, except to prove the truth of the matter asserted.

In *State v. Aaron*, 57 Wn. App. 277 (1990), an officer testified to an out-of-court declaration made by a police dispatcher. The court reasoned that if the legality of the search and seizure was being challenged, the information available to the officer as the basis for his action would be relevant and material. Nevertheless, the officer's state of mind in reacting to the information he learned from the dispatcher was not an issue and

16

did not make determination of the action more probable or less probable than it would be without the evidence.

In *State v. Johnson*, 61 Wn. App. 539 (1991), an officer testified to information from a confidential informant recorded in a search warrant affidavit. The State argued that the lieutenant's testimony was not offered to prove the truth of the matter asserted, but only to show the officer's state of mind at the time the search warrant was executed. The defendant did not challenge the validity or execution of the search warrant, so the lieutenant's state of mind in executing it was not at issue.

Finally in *State v. Edwards*, 131 Wn. App. 611 (2006), a detective testified that he initiated his investigation of the defendant based on statements of a confidential informant. Thus, the State argued the testimony was not offered to prove the truth of the confidential informant's statement to the detective, but to provide background to the officer's investigation. The *Edwards* court ruled the statement inadmissible hearsay because it was only relevant if offered for its truth, since the detective's motive for starting his investigation was not an issue in controversy. *Edwards*, 131 Wn. App. at 614.

Neither Trooper Raymond Seaburg nor Kyle Burgess specified who gave information during their respective investigations. Thus, the declarants are unknown and their specific statements are missing. Thus, the State could argue that the troopers'

17

testimony was not hearsay since the witnesses' statements were not repeated in court. But, *Johnson*, 61 Wn. App. 539 (1991), demands an opposite conclusion.

In *Johnson*, the lieutenant did not testify to the contents of the informant's statement, but the trial court allowed testimony, based on the statement, that he had reason to suspect the appellant was involved in drug trafficking. This court noted that cases from other jurisdictions have held that a law enforcement officer's testimony concerning an informant's or eyewitness's statement is inadmissible hearsay even when the officer does not repeat the contents of the statement, but only testifies that the statement led police to investigate or arrest the defendant. *See State v. Irving*, 114 N.J. 427, 555 A.2d 575 (1989); *State v. Hardy*, 354 N.W.2d 21, 23 (Minn. 1984); *Postell v. State*, 398 So. 2d 851, 854 (Fla. Dist. Ct. App. 1981); *Favre v. Henderson*, 464 F.2d 359 (5th Cir. 1972). The *Johnson* court held that when the inescapable inference from the testimony is that a nontestifying witness has furnished the police with evidence of the defendant's guilt, the testimony is hearsay, notwithstanding that the actual statements made by the nontestifying witness are not repeated. *Johnson*, 61 Wn. App. at 547.

The State also relies on this division's opinion in *State v. O'Hara*, 141 Wn. App. 900, 174 P.3d 114 (2007), *rev'd on other grounds*, 167 Wn.2d 91, 217 P.3d 756 (2009) to support its argument that the state troopers' testimony that they interviewed witnesses to support their conclusions was permissible. In *O'Hara*, a law enforcement officer testified

18

that he interviewed witnesses at the scene of the crime. The officer, however, did not link witness statements to any conclusions he drew. In our appeal, the state troopers testified that they concluded Rickey Kitchens drove the car based, in part, on witness statements. Reference to witness statements served no purpose other than to support the State's theory that Kitchens drove the Cherokee.

Issue 3: Whether the trial court's admission of the troopers' testimony regarding witness statements is harmless error?

Answer 3: Yes.

The State argues that Rickey Kitchens' trial counsel never objected to the hearsay testimony elicited from Troopers Raymond Seaburg and Kyle Burgess, and, therefore, Kitchens may not complain about the evidence on appeal. Kitchens contends his trial attorney objected, but, if the attorney failed to object, he deserves a new trial because a lack of objection deprived him of effective assistance of counsel. We also note that, if trial counsel failed to object to the hearsay testimony or conclusions of the troopers, we may still review the error if an issue of manifest constitutional error arises. RAP 2.5(a); *State v. Scott*, 110 Wn.2d 682, 686-87, 757 P.2d 492 (1988). Not all hearsay errors constitute a constitutional error. Nevertheless, even hearsay with an applicable exception becomes inadmissible if its admission would violate a defendant's confrontation clause rights precluding testimonial hearsay. *Davis v. Washington*, 547 U.S. 813, 821, 126 S.

19

Ct. 2266, 165 L. Ed. 2d 224 (2006).

We decline to decide whether defense counsel at trial sufficiently objected to the inadmissible evidence, whether any failure to object constitutes ineffective assistance of counsel, or whether the hearsay constituted testimonial hearsay. Resolution of these questions becomes important only in deciding what harmless error rule to apply. Even if we imposed the strictest or constitutional rule of harmless error, we would affirm the conviction.

A constitutional error is harmless if the appellate court is assured beyond a reasonable doubt that the jury verdict is unattributable to the error. *State v. Anderson*, 171 Wn.2d 764, 770, 254 P.3d 815 (2011). This court employs the "overwhelming untainted evidence" test and looks to the untainted evidence to determine if it is so overwhelming that it necessarily leads to a finding of guilt. *Anderson*, 171 Wn.2d at 770.

Rickey Kitchens' immediate, voluntary, and vehement protests at the accident site against being the driver of the car provides strong evidence of his guilt. More importantly, eyewitnesses testified that Kitchens was in the driver's seat as he and Marcia Howard were pulled from the Jeep Cherokee. Gary Hillin saw Kitchens in the driver's seat. Rescuers removed Kitchens from the vehicle first.

The undisputed physical evidence overwhelmingly establishes Rickey Kitchens as the driver and guilty of felony driving under the influence. For Marcia Howard and

20

No. 32999-2-III
*State v. Kitchens*

Kitchens to have switched seats after the accident, the two would have needed to perform Herculean and Houdiniesque acrobatics while upside down and without rescuers observing the feat. The position of the driver and passenger seats established the taller Rickey Kitchens as the driver.

## CONCLUSION

We affirm Rickey Kitchens' conviction for felony driving under the influence. The trial court did not deny him of public trial rights. Although the trial court admitted inadmissible hearsay, the error was harmless.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Siddoway, C.J.

_____
Brown, J.

21