[Nos. 24833–2–I; 24839–1–I.   Division One.   June 10, 1991.]

THE STATE OF WASHINGTON, *Respondent,* v. JODY
JOHNSON, *Defendant,* PATRICIA RENEE
MCNEAL, *Appellant.*

THE STATE OF WASHINGTON, *Respondent,* v. ALFRED
DWAYNE BROWN, *Defendant,* PATRICIA
RENEE MCNEAL, *Appellant.*

*Anna–Mari Sarkanen* of *Washington Appellate Defender Association*, for appellant.

*Norm Maleng, Prosecuting Attorney*, and *Timothy Bradshaw, Deputy*, for respondent.

BAKER, J.—In this consolidated appeal, Patricia Renee McNeal appeals her conviction for possession of cocaine with intent to deliver and her sentence for a separate conviction of possession of cocaine. She alleges the trial court

erred in the first case by admitting a police officer's testimony regarding information contained in a search warrant affidavit, which testimony: (1) was inadmissible hearsay; (2) denied her constitutional right of confrontation; (3) requires reversal of her conviction; and (4) requires resentencing in the second case using a lower offender score if her conviction in the first case is reversed.

### FACTUAL AND PROCEDURAL BACKGROUND

On March 1, 1988, Seattle police officers executed a narcotics search warrant at 5410 Renton Avenue South in Seattle. Lieutenant Patrick Barker testified that at the time the warrant was executed, police believed that one Jody Johnson was an occupant of the house. The search warrant listed as the subjects of the search a black male named Jody, a Cadillac vehicle, and the Renton Avenue residence.

Jody Johnson and the appellant were found in the back bedroom of the house. The first officer to enter that bedroom found appellant lying on the bed near some money, with seven small baggies of rock cocaine near her hand. Another officer testified that he was also in the first group of officers to enter the back bedroom, and that appellant was found lying face down across the bed, which was not made up and looked like it had been slept in. He testified that appellant was lying on top of a pouch of cocaine and that money was scattered around her on the bed and floor. Jody Johnson was at the foot of the bed when the officers entered the bedroom.

In the same bedroom, officers found a scale with cocaine powder on it on the headboard of the bed, loose cocaine powder on the sheets, a gun on a shelf adjacent to the bed, a walkie–talkie receiver, plastic bags and spoons, and a cellular telephone. A telepager beeper was also found in the house.

After appellant was handcuffed and taken from the bedroom, she was advised of her *Miranda* rights and waived them. Lieutenant Barker searched appellant and found

$342 in her pants pocket. Appellant stated she had approximately $500, the remainder of which must be in her purse. Lieutenant Barker retrieved her purse from the bedroom, and a search of it revealed a bindle of cocaine, but no money. Lieutenant Barker wanted the appellant to be "presentable" to go to jail, so he walked with her back to the bedroom to get her shoes. He located two pairs of her shoes in the closet, but could not find a third pair that she wanted. Appellant also asked for a black coat hanging on the wall. Lieutenant Barker searched the coat pockets and found a bindle of cocaine. The coat fit appellant perfectly.

Appellant's forfeiture notice listed as her property only the currency taken from her person. Johnson's forfeiture notice listed $1,652 in currency and the cellular telephone as his property.

Appellant testified concerning her relationship with Johnson and how she came to be at the Renton Avenue residence on the day of the raid. Appellant met Johnson 5 years earlier and began a romantic relationship with him that lasted approximately a year and a half. During that time, she became pregnant by Johnson. They split up soon after their daughter was born. After the breakup, Johnson would contact appellant occasionally and they would meet overnight. By the time of trial, their daughter was 2½ years old and appellant had another child, 8 months old, who she believes was also fathered by Johnson.

Appellant testified that on March 1, 1988, the day of her arrest, Johnson contacted her at her sister's house and asked her to meet him that evening. He gave appellant the address of a house she had seen before, but she testified that she had never previously been inside the house.

When appellant arrived at the address given to her by Johnson, she was dressed in pants and flat shoes and carried an overnight bag containing a negligee, a change of clothes, some house shoes and a pair of high heels. She was dressed casually because she had been "running around taking care of [her] business." She had also purchased about $60 worth of cocaine which she put in her purse. She

had received her welfare check that day, and had approximately $500 with her.

A man named T. Haynes, whom appellant testified she had met once before, answered the door. Haynes told her that Johnson was not there, and she could wait for him at the back of the house. Appellant went to the back bedroom, which was Haynes' son's room. She took off her shirt, put on her negligee robe over her pants, lay across the bed to watch television, and fell asleep. She denied there was anything on the bed when she lay down, and testified that she observed toys in the room but no narcotics or narcotics paraphernalia.

Appellant awoke to police officers saying, "Freeze, don't anybody move." She saw Johnson in the room when she awoke. Until that point she had not known he was there. Appellant testified that the narcotics items that were in the room when she awoke had not been there when she fell asleep. She knew Johnson used drugs, as she herself did occasionally, but she disclaimed prior knowledge of Johnson's drug dealing. However, she testified that "[h]e kept it away from me. He didn't involve me or his—or my kids or anything in any way." "I don't like to watch anybody doing anything that I don't want to see, to incriminate them or myself, so I choose not to be around."

The prosecutor stated outside the presence of the jury that the search warrant affidavit contained statements by a confidential informant that the informant had bought cocaine at the raided residence within the preceding 24 hours from a person fitting appellant's description. The prosecutor unsuccessfully sought to have the search warrant affidavit entered into evidence. Before this occurred, at the beginning of the trial, the prosecutor asked the following questions of Lieutenant Barker:

Q: From your experience, were you aware that house had been involved with narcotics trafficking?

A: Yes, we had received numerous complaints, plus had—the detectives had made a narcotics purchase from the residence.

Q: Do you know who that purchase was made from?

A: Well, according to the affidavit—

   MR. STEPHENS [defense counsel]: Your Honor, I object. Hearsay.

   THE COURT: Sustained.

Q: Did you know an occupant of the house to be a Mr. Jody Johnson?

A: We believed that to be correct, yes.

Q: *Did you further believe that Ms. McNeal could be at that residence?*

A: *Yes.*

Q: And what is the basis of that opinion?

   MR. STEPHENS: I object. It calls again for hearsay.

   MR. BRADSHAW: It would go to the state of the mind of the officer.

   THE COURT: Overruled.

A: We had served other search warrants at residences believed to be run by Jody Johnson, and through people at these—

   MR. STEPHENS: I object, Your Honor. It is hearsay again.

   THE COURT: Sustained.

Q: *Did you have reason to suspect that Ms. McNeal was involved with the trafficking at that residence?*

   MR. STEPHENS: I object, Your Honor.

   MR. BRADSHAW: Same grounds, Your Honor.

   THE COURT: That can be answered yes or no. It doesn't call for any hearsay.

A: *That was my information, yes.*

Q: All right. What was your role in executing the search warrant?

   MR. STEPHENS: Your Honor, as to the last answer and question, I'd ask it to be struck. The officer has given an answer based totally on hearsay.

   THE COURT: Overruled.

(Italics ours.) Defense counsel did not request a limiting instruction.

Defense counsel asked the jury to convict appellant of possession of cocaine based on her admitted possession of $60 worth of cocaine for personal use, but to acquit her of possession with intent to deliver. He argued from the instruction on accomplice liability that even if the jury concluded appellant knew Johnson was dealing drugs, her mere presence and knowledge of the criminal activity did not make her an accomplice. The prosecutor argued, based on the same instruction, that appellant was an accomplice because she was present and ready to assist in the drug dealing. The jury found appellant guilty of possession with

intent to manufacture or deliver cocaine in King County cause 89–1–00119–1.

On November 14, 1988, 8 months after appellant's arrest in the narcotics raid described above, but prior to her trial in that matter, she was arrested again and charged with possession of cocaine. She entered a guilty plea in the second case, King County cause 89–1–00970–2, and a sentencing hearing was held in both cases on the same day. Appellant received a sentence of 15 months' confinement for the possession with intent to deliver conviction, and 60 days for the possession conviction. The 60–day sentence was within the standard sentencing range of 2 to 6 months, calculated using an offender score of "1". That score was based on the conviction herein appealed.

## I
### ADMISSION OF LIEUTENANT BARKER'S TESTIMONY

Lieutenant Barker testified to information from a confidential informant recorded in a search warrant affidavit. The informant's statement contained in the affidavit was therefore double hearsay. Hearsay is defined in ER 801(c) as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."

Respondent argues that Lieutenant Barker's testimony was not "offered . . . to prove the truth of the matter asserted", ER 801(c), but only to show the lieutenant's state of mind at the time the search warrant was executed. However, appellant did not challenge the validity or execution of the search warrant. The lieutenant's state of mind in executing it was therefore not at issue.

Out–of–court declarations made to a law enforcement officer may be admitted to demonstrate the officer's or the declarant's state of mind only if their state of mind is relevant to a material issue in the case; otherwise, such declarations are hearsay. *State v. Aaron,* 57 Wn. App. 277, 279–81, 787 P.2d 949 (1990); *State v. Stamm,* 16 Wn. App. 603, 610–12, 559 P.2d 1 (1976), *review denied,* 91 Wn.2d

1013 (1977); *State v. Lowrie,* 14 Wn. App. 408, 411–13, 542 P.2d 128 (1975), *review denied,* 86 Wn.2d 1010 (1976); *State v. Murphy,* 7 Wn. App. 505, 509, 500 P.2d 1276, *review denied,* 81 Wn.2d 1008 (1972). In *State v. Lowrie, supra,* a detective testified that an informant told him the defendant was involved in the crimes that were the subject of the prosecution. Although the trial court indicated that the testimony was not admitted for the truth of the matter asserted, but only to show that the statement was made and that it in turn resulted in police action, the appellate court held the statement was inadmissible hearsay. The court reasoned that neither the making of the statement by the informant nor the resultant police action was relevant to any issue in the case, except to prove the truth of the matter asserted. Likewise, in *State v. Aaron, supra,* where an officer testified to an out–of–court declaration made by a police dispatcher, this court stated:

> If the legality of the search and seizure was being challenged, . . . the information available to the officer as the basis for his action would be relevant and material. However, the officer's state of mind in reacting to the information he learned from the dispatcher is not in issue and does not make "determination of the action more probable or less probable than it would be without the evidence." ER 401. Accordingly, the dispatcher's statement was not relevant for another purpose.

*State v. Aaron,* 57 Wn. App. at 280.

█ Lieutenant Barker did not testify to the contents of the informant's statement, but was allowed to testify, based on the affidavit containing the statement, that he had reason to suspect the appellant was involved in drug trafficking. Several cases from other jurisdictions have held that a law enforcement officer's testimony concerning an informant's or eyewitness's statement is inadmissible hearsay even where the officer does not repeat the contents of the statement, but only testifies that the statement led police to investigate or arrest the defendant. *See State v. Irving,* 114 N.J. 427, 555 A.2d 575, 584–86 (1989); *State v. Hardy,* 354 N.W.2d 21, 23 (Minn. 1984); *Postell v. State,* 398 So. 2d 851, 854 (Fla. Dist. Ct. App.), *review denied,* 411 So. 2d

384 (Fla. 1981); *Favre v. Henderson,* 464 F.2d 359 (5th Cir.), *cert. denied,* 409 U.S. 942, 34 L. Ed. 2d 193, 93 S. Ct. 235 (1972). In *Postell v. State, supra,* the court stated:

> We hold that where, as in the present case, the inescapable inference from the testimony is that a non–testifying witness has furnished the police with evidence of the defendant's guilt, the testimony is hearsay, and the defendant's right of confrontation is defeated, notwithstanding that the actual statements made by the non–testifying witness are not repeated.

(Footnotes omitted.) *Postell,* 398 So. 2d at 854. This is exactly what occurred here, and we likewise hold that the challenged testimony was inadmissible hearsay.

Respondent draws our attention to *United States v. Hoffer,* 869 F.2d 123, 126 (2d Cir.), *cert. denied,* 490 U.S. 1094, 104 L. Ed. 2d 996, 109 S. Ct. 2440 (1989), a prosecution for the crime of assault on a federal officer engaged in official duties, in which a second officer testified that he heard a police radio call of "officer needing assistance." *Hoffer* is inapposite because the testimony challenged there did not implicate the defendant in a crime.

Likewise, respondent's reliance on *State v. Aaron, supra,* is misplaced. There, this court stated, "if [it is] necessary at trial for the officer to relate historical facts about the case, it would be sufficient for him to report he acted upon 'information received.'" *Aaron,* 57 Wn. App. at 281. As in *Aaron,* the disputed testimony here went beyond merely establishing that officers came to the scene because of "information received", and pointed to the defendant with information connecting her to a crime. It would have been sufficient to explain police presence at the scene for Lieutenant Barker to testify that police had a search warrant for the residence. There was no need to further testify that the defendant was expected to be at the residence and was suspected of involvement in criminal activity there. These latter statements were simply hearsay.

Respondent also cites *United States v. Stelten,* 867 F.2d 453 (8th Cir. 1988), *cert. denied,* 490 U.S. 1050, 104 L. Ed. 2d 430, 109 S. Ct. 1962 (1989), for the proposition that testimony which would otherwise be hearsay is admissible to

ensure the completeness and intelligibility of admissions by a criminal defendant. However, *Stelten* involved a tape–recorded conversation between the defendant and two other persons, without whose statements his own would have been unintelligible. The case has no bearing on the one sub judice.

Respondent also argues that appellant failed to request a limiting instruction after admission of the challenged testimony, and therefore this case is distinguishable from *State v. Aaron*, 57 Wn. App. at 279–81, where the defendant requested but was denied a limiting instruction. Although in *Aaron* we found that the refusal to grant a limiting instruction compounded the trial court's error, we also found that admission of the hearsay testimony was error in itself. *Aaron*, 57 Wn. App. at 281.

While the prosecutor suggested "state of mind" as a limited basis for admitting some of the challenged testimony in the case at bar, the actual basis for the court's ruling is not set forth in the record. In response to one of the defendant's hearsay objections, the court stated: "That can be answered yes or no. It doesn't call for any hearsay." In addition to misapplying the rule against hearsay evidence, this response does not indicate the court was admitting the testimony for a limited purpose. In fact, on two other occasions during the trial the court gave this same response to hearsay objections in contexts that do not suggest any limited use for the testimony.

Even if the challenged testimony was admitted for a limited purpose, its admission for that purpose was error because the legality of the search and seizure was not at issue. Since a limiting instruction could not have corrected the trial court's error, appellant's failure to request one does not waive the error. *See State v. Barber*, 38 Wn. App. 758, 771, 689 P.2d 1099 (1984), *review denied*, 103 Wn.2d 1013 (1985); *accord, State v. Neslund*, 50 Wn. App. 531, 540, 749 P.2d 725, *review denied*, 110 Wn.2d 1025 (1988).

We therefore find that the challenged testimony was inadmissible hearsay and that the appellant's failure to request a limiting instruction did not waive her objection thereto.

## II
### RIGHT OF CONFRONTATION

■ The hearsay statements erroneously admitted by the trial court violated appellant's right to be confronted with the witnesses against her, which right is guaranteed by the sixth amendment to the United States Constitution and Const. art. 1, § 22 (amend. 10). Under these provisions, hearsay implicating the accused is admissible in a criminal trial only if the declarant is unavailable and the statement bears adequate indicia of reliability. *See Ohio v. Roberts,* 448 U.S. 56, 66, 65 L. Ed. 2d 597, 100 S. Ct. 2531 (1980); *State v. Whelchel,* 115 Wn.2d 708, 715, 801 P.2d 948 (1990). "A witness may not be deemed unavailable unless the prosecution has made a good faith effort to obtain the witness' presence at trial." *State v. Ryan,* 103 Wn.2d 165, 170, 691 P.2d 197 (1984).

The record is devoid of any efforts by the prosecution to bring to court either the unnamed officer who prepared the search warrant affidavit or the unnamed informant who provided the information. Nor is there any indication in the record of the reliability of the informant's statements. The fact that this case involves double hearsay only compounds the problem of unreliability. Appellant was denied the opportunity to cross–examine her unnamed accuser and the jury was deprived of any basis for evaluating the truth of the declarations. Appellant's right of confrontation was therefore violated.

## III
### HARMLESS ERROR

■ A violation of a criminal defendant's constitutional right of confrontation may be harmless error if "the untainted evidence is so overwhelming that it necessarily

leads to a finding of guilt.'" *State v. Palomo,* 113 Wn.2d 789, 799, 783 P.2d 575 (1989), *cert. denied,* ___ U.S. ___, 112 L. Ed. 2d 53, 111 S. Ct. 80 (1990) (quoting *State v. Guloy,* 104 Wn.2d 412, 426, 705 P.2d 1182 (1985), *cert. denied,* 475 U.S. 1020, 89 L. Ed. 2d 321, 106 S. Ct. 1208 (1986)). This is not the case here. While the evidence of appellant's possession of cocaine was undisputed, and the evidence of Jody Johnson's drug trafficking was overwhelming, there was *no* evidence linking appellant to Johnson's drug trafficking other than her presence in the room and physical proximity to drugs, money, and drug paraphernalia.

Jury instruction 16 on accomplice liability, which became the law of the case, *State v. Robinson,* 92 Wn.2d 357, 359, 597 P.2d 892 (1979), stated in pertinent part:

> A person who is present at the scene and ready to assist by his or her presence is aiding in the commission of the crime. *However, more than mere presence and knowledge of the criminal activity of another must be shown to establish that a person present is an accomplice.*

(Italics ours.) Appellant's testimony that she was asleep in the bedroom when she was arrested was corroborated by police testimony that she was lying face down across a bed that looked slept in, and that she was barefoot and not dressed to be "presentable". Even if the jury disbelieved her testimony and concluded that she was awake and fully aware of Johnson's narcotics dealings, this is insufficient to establish accomplice liability under the instruction. Instead, the prosecution relied on the challenged hearsay testimony, supplemented by its questioning of Officer Rusness ("Do you know from the search warrant the basis of knowledge that we are all talking about, whether Ms. McNeal—") and questioning of the appellant ("Isn't it true that you were at that very house the day before, ma'am?") to suggest that appellant was previously involved with drug trafficking at the residence.

The evidence inculpating appellant of the charge of possession with intent to deliver was not "so overwhelming that it necessarily leads to a finding of guilt.'" *Palomo,* 113

Wn.2d at 799. Even if the seven bindles found on the bed were in her actual or constructive possession, no evidence was produced that this amount was more consistent with commercial sale than personal use.[1] *Cf. State v. Cobelli*, 56 Wn. App. 921, 924–25, 788 P.2d 1081 (1989) (possession of several baggies containing a total of 1.4 grams of marijuana insufficient to support an inference of intent to deliver); *State v. Kovac*, 50 Wn. App. 117, 121, 747 P.2d 484 (1987) (possession of 7 baggies containing a total of 8 grams of marijuana insufficient to support an inference of intent to deliver); *State v. Liles*, 11 Wn. App. 166, 170, 521 P.2d 973, *review denied*, 84 Wn.2d 1005 (1974) (possession of 6.88 grams of powder containing 5 percent heroin insufficient to support an inference of intent to deliver).

On this record we cannot say that the evidence of appellant's intent to deliver cocaine meets the overwhelming untainted evidence test. We therefore find that the violation of appellant's right of confrontation requires reversal of her conviction for possession with intent to deliver cocaine. However, because the evidence of possession of the two bindles found in appellant's purse and coat was undisputed, we remand for entry of an amended judgment of guilt and for resentencing on the lesser included offense of possession. *State v. Cobelli*, 56 Wn. App. at 925–26; *State v. Kovac*, 50 Wn. App. at 121; *State v. Liles*, 11 Wn. App. at 172–73.

## IV
### SENTENCING

Appellant's conviction for possession of cocaine in King County cause 89–1–00970–2 had a standard sentencing range of 2 to 6 months for those with an offender score of

---

[1]Lieutenant Barker testified that an average–sized bindle of cocaine weighed 1 gram and sold for $65 to $100 at the time of appellant's arrest. Officer Goetz testified that the street value of a gram of rock cocaine was as high as $175, and a gram of shake or powder cocaine as high as $125. Neither officer testified about personal consumption levels among those who use cocaine, and Lieutenant Barker denied having any such knowledge.

"1". RCW 9.94A.310, .320. Appellant was assigned an offender score of 1 based on the conviction that we now reverse. Her offender score remains the same, however, because we herein remand for entry of a conviction of a lesser included offense—possession of cocaine.

A remand for resentencing is unnecessary. The trial court found no mitigating factors and its sentence of 60 days was at the bottom of the standard range of 2 to 6 months. Therefore, resentencing in light of a lesser prior offense could not result in a lower sentence, and should not result in a higher one.

The conviction in King County cause 89–1–00119–1 (possession with intent to deliver cocaine) is reversed and remanded for entry of an amended judgment and resentencing for possession of cocaine. The sentence in King County cause 89–1–00970–2 (possession of cocaine) is affirmed.

GROSSE, C.J., and FORREST, J., concur.