IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 34964-1-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RICHARD EARL KIRKLAND, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

FEARING, C.J. — Richard Kirkland appeals his convictions for robbery and

possession of stolen property. He contends his trial counsel was ineffective when failing

to object to inadmissible hearsay and witness vouching. We disagree and affirm

Kirkland's convictions.

FACTS

On the evening of October 13, 2015, 15-year-old Nicolas Beckstead-Braghetta

dined at a Silverdale McDonald's restaurant near a strip mall that included a Catherine's

clothing store. While inside the McDonald's, a person unknown to Beckstead-Braghetta

approached him, identified himself as E.J., and began a conversation. E.J. wore a black

jacket, black pants, and black shoes. E.J. showed Beckstead-Braghetta a handgun and

declared his intention to rob a store, maybe Macy's. Beckstead-Braghetta informed E.J. of the stupidity of his plan. Beckstead-Braghetta considered the gun fake because, when E.J. tapped the gun on a table, the gun emanated no metal sound. E.J. then walked out of the McDonald's with Beckstead-Braghetta following. As the two walked in front of Catherine's store, E.J. donned a ski mask, face scarf, and sunglasses, pulled out the gun, said wait a minute, and entered the store. Beckstead-Braghetta fled the area.

Leslie Kitt and Tricia Nace worked as sales clerks at Catherine's, as E.J. entered the store at approximately 7 p.m. on October 13. Nace was in a back room, and Kitt spoke on a phone. A hooded E.J. walked toward Kitt, pulled a gun from his pocket, pointed the weapon at her, and ordered that she surrender money. Kitt relinquished the register's contents. As Nace returned from the back room, the robber grabbed the bag of money and fled the store. Nace saw him flee, but did not see his face. The two clerks locked the door, called 911, and called the store manager. Within a few minutes, Kitsap County Sheriff's Deputy Dave Meyer arrived at Catherine's and took statements from Leslie Kitt and Tricia Nace.

After the robbery, Nicolas Beckstead-Braghetta called his uncle, Marty Major, who retrieved him and drove him to a nearby Wendy's restaurant. Nicholas Galloway accompanied the uncle and nephew to Wendy's. The trio saw E.J. at the restaurant.

Nicholas Galloway separated from Nicolas Beckstead-Braghetta and Marty Major when leaving the Wendy's restaurant. Apparently Galloway gained knowledge of the

2

robbery and phoned 911 to report the crime. Later that evening Sheriff Detectives Lisa Gundrum and Laurie Blankenship met with Nicholas Galloway, who provided names, descriptions, and an address for the suspect. Galloway claimed that Richard Kirkland, called E.J., robbed Catherine's and that Marty Major and Nicolas Beckstead-Braghetta accompanied Kirkland.

Detectives Lisa Gundrum and Laurie Blankenship contacted Nicolas Beckstead-Braghetta. Although he initially denied knowledge of the robbery, Beckstead-Braghetta eventually told the detectives about his interactions with E.J. on the day of the robbery.

The Kitsap County Sheriff's office determined that E.J. was Richard Kirkland. On October 13, Detectives Laurie Blankenship and Jennifer Rice spoke with Kirkland's girlfriend at the Wendy's restaurant. The girlfriend disclosed that she earlier saw Kirkland with an ersatz gun.

Law enforcement officers executed a search warrant at a home where Richard Kirkland shared a bedroom with his girlfriend. Inside the bedroom, the officers found black gloves in a laundry hamper, a leather handgun holster, a safe with a stolen checkbook inside, and a pair of shoes containing stolen prescription drugs.

## PROCEDURE

The State of Washington charged Richard Kirkland with first degree robbery, second degree possession of stolen property, and third degree possession of stolen property. At a jury trial, the State presented testimony from thirteen witnesses, including:

3

Leslie Kitt, Tricia Nace, Laurie Blankenship, Lisa Gundrum, Joseph Hedstrom, and

Nicolas Beckstead-Braghetta. Kirkland's arguments on appeal center on testimony

provided by three investigating officers: Detectives Laurie Blankenship and Lisa

Gundrum and Deputy Joseph Hedstrom. The relevant portions of their testimony follow.

During trial, Detective Laurie Blankenship testified:

Q. Okay. Did you learn anything significant from those interviews, without reiterating what they told you, that directed your investigation?
A. Nicolas [Beckstead-]Braghetta shared information with us that was consistent with what was reported by the victim at Catherine's store and provided the same clothing description as the victim at the Catherine's store provided to us as well.
Q. Why was that significant?
A. Because that just led to credibility that, you know, he saw this person in these clothes, and this matches the same description that Catherine's store had provided—victim had provided to us.
Q. Was he able to identify who was wearing those clothes?
A. Yes. He said EJ was wearing those clothes.
Q. And did he provide any further information on the identity, or how did—how did you determine who EJ was?
A. We found that little earlier on when Nicolas [Beckstead-]Braghetta got into the car with his Uncle Marty, and he told him about a conversation he had had with a subject named EJ and what the plans EJ had described to him, what he was going to do.

Report of Proceedings (RP) at 77-78.

Laurie Blankenship continued:

Q. Okay. So what did you do next, if anything?
A. We finished up the search warrant, and I think we secured for the night. No, I'm sorry. Let me think.
No, we did not secure for the night. After that, Detective Jennifer Rice and I went to Wendy's restaurant to talk to Kirkland's girlfriend.
Q. Okay. And without relaying what she said to you, did you learn

4

anything from that interview that aided in your investigation?

A. Yes, I did. I spoke to her outside of the restaurant and back by a dumpster, Detective Rice and I, and what she disclosed to us was she had seen Kirkland with a gun, she described it as not a real gun, and she said her brother had also seen this gun inside the bedroom as well.

RP at 85.

Detective Lisa Gundrum testified at trial concerning her interview of Nicholas

Galloway:

Q. Okay. And what information did you receive from that interview, if anything, that aided in your investigation?

A. He indicated that he had been present during the conversation of several other people and talking about what led up to the robbery. And then subsequently they went to a Wendy's store in Silverdale, and they actually—when they arrived at that Wendy's, the suspect was standing at the Wendy's as well. So I don't know how much more detail you want me to go into at that point.

Q. Did he lead you to—did he provide you any follow-up information, addresses, names, descriptions, anything that would—that you took into consideration in continuing your investigation after that?

A. He had been—Nicolas had been hanging out with another male named Marty Major at that—at that time, as well as Marty's 15-year-old nephew, and that—the whole conversation about the robbery was between those three. Those three went to the Wendy's together.

Nicolas felt very uncomfortable continuing on. Marty and the 15-year-old and the defendant got into Marty's vehicle, and they drove away. So Nicolas was able to provide us with the vehicle information, the description, the direction of travel, what the suspect was wearing—or the defendant was wearing, those types of things.

Q. And at what point did he make the 911 call?

A. What he explained to me was that he felt in fear of the defendant, didn't want to go with him, understood that there was a gun involved, a robbery. He didn't want to be involved in it. So when the three—when the other three drove away, he went into the Wendy's, feared that the defendant would come back, and he knew that he had a gun. So he ended up walking into a nearby field, and at that point, he made the 911 call.

5

RP at 95-97.

Deputy Joseph Hedstrom testified regarding his conversation with Nicholas

Galloway:

> Q. Okay. And without reiterating exactly what he said to you, did he provide any information that directed your investigation?
> A. Yes.
> Q. What information was that?
> A. He said he was in a vehicle in the TJ Maxx parking lot, learned of the robbery and that the suspect had ran up to Wendy's. They drove up there, and the suspect was standing outside.

RP at 140. Deputy Hedstrom also testified regarding a conversation with Marty Major:

> Q. Okay. And did you receive any information that directed your investigation after that?
> A. Yes. Marlin [Major] had said he had dropped the suspect and Marty off at a house on McWilliams.
> Q. Did you have a name for the other person?
> A. At that time, I want to say that he was identified as EJ.
> Q. Okay. And were you able—later able to determine who EJ was?
> A. Yes.
> Q. How did you determine that?
> A. Through interviews with Marty and I think Marty's nephew.

RP at 144.

Richard Kirkland also complains about the following testimony from Nicolas

Beckstead-Braghetta solicited from the State:

> Q. Nick, is it easier for you to remember the truth or to remember a lie?
> A. It's easier to remember the truth.
> Q. Okay. So you don't remember everything that you told law enforcement that night; is that right?

A. Uh-huh.
Q. And you testified that—that some of it was a lie?
A. Yeah.
Q. But you remember the facts that you testified to today?
A. Yeah.
Q. And is what you told us today the truth?
A. Yes.

RP at 197.

The jury found Richard Kirkland guilty on all counts, first degree robbery, second degree possession of stolen property, and third degree possession of stolen property. The trial court sentenced Kirkland to 56 months' confinement.

## LAW AND ANALYSIS

Richard Kirkland contends that his trial counsel performed constitutionally ineffectively because his counsel failed to object to inadmissible and prejudicial hearsay and his counsel failed to object to credibility vouching by the State's witnesses. He seeks a new trial on all charges. The State responds that Kirkland's counsel did not provide ineffective assistance because the evidence was arguably admissible, tactical reasons justified not objecting, and any error in admitting the evidence was harmless. We hold that Kirkland's trial counsel was not ineffective.

The Sixth Amendment to the United States Constitution guarantees defendants the right to legal counsel in criminal trials. Like the federal constitution, Washington's Constitution also grants an accused, in a criminal prosecution, the right to appear by

7

counsel. WASH. CONST. art. I, § 22. The right to counsel under the state and federal constitutions are coextensive. *State v. Long*, 104 Wn.2d 285, 288, 705 P.2d 245 (1985).

Trial counsel must do more than sit at counsel table with the criminal defendant. To meaningfully protect an accused's right to counsel, an accused is entitled to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Courts apply a two pronged test to determine if counsel provided effective assistance: (1) whether counsel performed deficiently, and (2) whether the deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. at 687. If a defendant fails to establish one prong of the test, this court need not address the remaining prong. *State v. Hendrickson*, 129 Wn.2d 61, 78, 917 P.2d 563 (1996). Ineffective assistance of counsel presents a mixed question of law and fact that we review de novo. *Strickland*, 466 U.S. at 698.

To satisfy the first prong, the defendant must show that, after considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). The burden is on the defendant to show deficient performance. *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011). This court gives great deference to trial counsel's performance and begins the analysis with a strong presumption counsel performed effectively. *State v. West*, 185 Wn. App. 625, 638, 344 P.3d 1233 (2015). Trial strategy and tactics cannot form the basis of a finding of deficient performance. *State v. Johnston*, 143 Wn. App. 1, 16, 177

8

P.3d 1127 (2007). Richard Kirkland complains of his trial counsel's failure to object to testimony. The decision of when or whether to object is a classic example of trial tactics. *State v. Madison*, 53 Wn. App. 754, 763, 770 P.2d 662 (1989).

We agree with Richard Kirkland that the State introduced inadmissible hearsay. Detective Laurie Blankenship testified to information shared by Nicolas Beckstead-Braghetta about the identity of and clothes worn by Kirkland. Blankenship testified to comments uttered by Richard Kirkland's girlfriend concerning his possessing a fake gun. Detective Lisa Gundrum testified at trial concerning Nicholas Galloway's remarks concerning the robbery and Galloway's identification of Richard Kirkland. Deputy Joseph Hedstrom testified that Galloway told him that he saw Richard Kirkland at the Wendy's restaurant. Deputy Hedstrom also testified regarding Marty Major identifying E.J. as the robber.

Hearsay is an out of court statement offered in evidence to prove the truth of the matter asserted. ER 801(c). Although hearsay is generally inadmissible, a statement must be offered for its truth to constitute hearsay. *State v. Edwards*, 131 Wn. App. 611, 614, 128 P.3d 631 (2006); *State v. Post*, 59 Wn. App. 389, 394-95, 797 P.2d 1160 (1990), *aff'd*, 118 Wn.2d 596, 826 P.2d 172 (1992). A statement does not qualify as hearsay if used for the purpose of showing why someone acted as they did. *State v. Post*, 59 Wn. App. at 394-95. Nevertheless, the purpose behind a person's actions must be relevant to the issues posed by the prosecution. Out-of-court declarations may be admitted to

9

explain a witness's conduct only if the conduct is relevant to a material issue in the case; otherwise, such declarations remain hearsay. *State v. Hudlow*, 182 Wn. App. 266, 278, 331 P.3d 90 (2014); *State v. Johnson*, 61 Wn. App. 539, 545, 811 P.2d 687 (1991).

The State argues that it offered the sheriff officers' testimony about witness statements to explain the steps taken in the investigation and not to prove the truth of witnesses's statements. Nevertheless, the gist of the testimony was to show congruence between Nicolas Beckstead-Braghetta's story, Nicholas Galloway's story, Marty Major's story, and the girlfriend's story with the descriptions provided by store clerks Leslie Kitt and Tricia Nace. The validity or reasonableness of the investigation was not at issue in the case. The question for the jury was whether Richard Kirkland committed a robbery. Although the testimony appeared couched in the narrative of the detectives' investigations, the State used the testimony to tie Kirkland to the robbery.

*State v. Johnson*, 61 Wn. App. 539 (1991) rejects the State's arguments. In *Johnson*, the police lieutenant did not testify to the contents of the informant's statement, but the trial court allowed testimony, based on the informant's statement, that the officer had reason to suspect the appellant engaged in drug trafficking. This court noted that cases from other jurisdictions held that a law enforcement officer's testimony concerning an informant's or eyewitness's statement is inadmissible hearsay even when the officer does not repeat the contents of the statement, but only testifies that the statement led police to investigate or arrest the defendant. The *Johnson* court held that, when the

10

inescapable inference from the testimony is that a nontestifying witness furnished the police with evidence relevant to the defendant's guilt, the testimony is hearsay, notwithstanding that the officer does not repeat the actual statements made by the nontestifying witness.

The State's phrasing of a question to avoid direct quotations from the informant does not avoid the bar of hearsay evidence. Inadmissible evidence is not made admissible by allowing the substance of a testifying witness's evidence to incorporate out-of-court statements by a declarant who does not testify. *State v. Hudlow*, 182 Wn. App. at 281 (2014).

Our conclusion that the State introduced inadmissible hearsay without objection from Richard Kirkland's trial counsel does not necessarily mean that trial counsel performed defectively. Trial counsel did not perform deficiently if failure to object to the inadmissible hearsay was a trial strategy or tactic. *State v. Johnston*, 143 Wn. App. at 16. The decision of when or whether to object is a classic example of trial tactics. *State v. Madison*, 53 Wn. App. at 763 (1989). Only in egregious circumstances, on testimony central to the State's case, will the failure to object constitute incompetence of counsel justifying reversal. *State v. Madison*, 53 Wn. App. at 763.

Trial counsel's failure to object to inadmissible hearsay testimony in this case was not egregious, and the inadmissible testimony was not central to the State's case. Kirkland's trial counsel may have withheld an objection to the hearsay statements

11

because Nicolas Beckstead-Braghetta, scheduled to testify later, would deliver the same testimony. The only police hearsay testimony that did not involve Beckstead-Braghetta's observations was the disclosure from Kirkland's girlfriend. She did not testify at trial. Nevertheless, the information she provided was not central to the State's case. She informed law enforcement that Kirkland had a gun, but Beckstead-Braghetta provided percipient testimony as to a gun. Beckstead-Braghetta's testimony weighed heavier since it placed Kirkland in possession of a gun at the scene of the robbery, whereas the girlfriend's testimony simply established that Kirkland may have possessed a gun. Kikland's trial counsel provided effective assistance because the failure to object to inadmissible hearsay may have been a trial tactic or strategy not to bother with evidence that would be admitted from other testifying witnesses.

We reject Richard Kirkland's argument that the testimony of Nicolas Beckstead-Braghetta about testifying truthfully constitutes impermissible witness vouching. On redirect, Beckstead-Braghetta testified that he first lied to law enforcement officers, but he told the truth at trial. A witness may testify that he is telling the truth. *Batsell v. United States*, 403 F.2d 395, 401 (8th Cir. 1968). In fact, ER 603 requires a witness to "declare that the witness will testify truthfully, by oath or affirmation." If Richard Kirkland's argument succeeded, trials would need to forego the swearing in of witnesses. Failure to object to this testimony was not deficient performance.

## CONCLUSIONS

We hold that Richard Kirkland's trial counsel did not engage in constitutionally deficient performance. We thereby affirm Kirkland's convictions. At the concession of the State, we decline to award the State costs on appeal.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____, J.
Fearing, C.J.

WE CONCUR:

_____          _____
Korsmo, J. (concurs in result only)          Lawrence-Berrey, J.

13