IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | |
|---|---|
| THE STATE OF WASHINGTON, | No. 85456-9-I |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| BRANDON MICHAEL HOFFMAN, | |
| Appellant. | |

BOWMAN, A.C.J. — A jury convicted Brandon Michael Hoffman of second degree murder. Hoffman appeals, arguing the trial court erred by admitting irrelevant hearsay evidence and giving a first aggressor jury instruction. He also argues the prosecutor committed misconduct during closing argument. Finally, Hoffman argues and the State concedes that the court erred by imposing a victim penalty assessment (VPA) and DNA collection fee. We affirm Hoffman's conviction but remand for the trial court to strike the VPA and DNA collection fee from his judgment and sentence.

FACTS

In 2019, Bryce McFarland was the maintenance person at Laru Apartments in Burien. McFarland often hired Hoffman to help him with maintenance and renovation projects. In April, Hoffman was helping McFarland do some renovation work. Just before midnight on April 8, Hoffman and

McFarland were talking in an alley behind the apartments near Hoffman's car.[1]
During their conversation, Joshua Barquet[2] was walking along the sidewalk of
4th Ave. SW, which intersected the alley at a distance from Hoffman and
McFarland. Barquet was "just yelling." When Hoffman and McFarland looked at
Barquet, he yelled, "[W]hat the fuck are you looking at." Hoffman and McFarland
told him to "just shut up" and "keep going." Barquet walked away. Then
Hoffman, armed with two handguns, gave one gun to McFarland. They
continued their conversation by Hoffman's car.

A short time later, Antonio Jones and two other men[3] walked past the alley
on 4th Ave. SW. Then Barquet, Jones, and the two other men walked together
back to where the street intersected the alley. The group was laughing, "talking
shit," and telling Hoffman and McFarland that they "[a]in't going to do shit" about
it. The four men stayed on 4th Ave. SW and did not enter the alley. McFarland
quickly walked several yards down the alley to confront the group and Hoffman
followed closely behind him. While approaching the group, Hoffman visibly
moved his gun from his back right pocket to his front right pocket. He told them,
" 'I'll beat the brakes off you right now, like, but you guys gotta go.' "

When Hoffman and McFarland reached 4th Ave. SW, Jones stood at the
end of the alley, while Barquet and the other two men walked south past the
alley's entrance. Hoffman and McFarland walked past Jones toward the other

---

[1] Several surveillance cameras in the area captured portions of the events leading to and during the incident. The video footage does not have audio.

[2] Barquet is a Black man.

[3] Jones and the two other individuals are also Black men.

three men. Within seconds, the groups started shooting at each other.[4] Jones, unarmed and standing behind Hoffman, turned around and started to run in the opposite direction. But after just a couple of steps, Hoffman turned toward Jones and shot him several times in the back. Jones fell to the ground in the street. Then one of the men shot Hoffman in his neck. He fell to the ground next to Jones briefly before standing back up. Hoffman and McFarland started to leave, but Hoffman stopped to go back and pick up his hat, which was lying in the street near Jones. Jones was still moving. Hoffman and McFarland then ran down the alley away from the scene and left Jones lying in the middle of 4th Ave. SW. Medics arrived and pronounced Jones dead at the scene.

Meanwhile, SeaTac Police Department Deputy Matthew Koceski found Hoffman at a nearby hospital receiving care for his neck wound. Hoffman told Deputy Koceski his version of the events. A few hours later, King County Sheriff's Detective Matthew Olmstead and Detective Benjamin Wheeler interviewed McFarland. McFarland explained his version of the incident and used a racial slur to describe Barquet.

In June 2019, the State charged McFarland with unlawful possession of a firearm, Hoffman with unlawful delivery of a firearm, and both men with unlawful possession of methamphetamine. In December 2020, the State amended the information to add a charge against both men of felony murder in the second degree while armed with a firearm. Then, in March 2023, the State amended its information again to charge Hoffman with only second degree felony murder with

---

[4] The evidence is unclear about who fired the first shot.

a firearm enhancement and dropped the other charges. In April 2023, the case against Hoffman proceeded to a three-week jury trial.

Hoffman's theory at trial was that he killed Jones in self-defense and in defense of McFarland. Several witnesses testified about the incident. The State offered testimony from Detective Wheeler that McFarland used a racial slur to describe Barquet in his interview after the shooting. Hoffman objected to the testimony as inadmissible hearsay and unfairly prejudicial.[5] The State argued McFarland's statement was not hearsay because it was not offered for the truth of the matter asserted. It claimed the statement showed McFarland's state of mind. The court admitted the statement but instructed the jury that it could consider it "only" to assess McFarland's state of mind.

Before closing arguments, the State asked for a first aggressor instruction. It argued the evidence showed that Hoffman was aggressive toward Barquet from the beginning, armed himself and McFarland with guns, confronted Barquet and the other three men, and then visibly moved his firearm from his back pocket to his front pocket as he approached them. The trial court agreed and gave the first aggressor instruction. Hoffman asked for self-defense and defense-of-others jury instructions. The court instructed the jury on both.

In closing argument, the State maintained that Hoffman could not have legally acted in defense of McFarland because Hoffman knew that McFarland was not an innocent party. It argued that

> under no circumstances, in viewing all of this evidence, could Bryce McFarland be identified as an innocent party. He chases after

---

[5] Before Detective Wheeler testified, the court overruled the same objection outside the presence of the jury.

Joshua Barquet. He readily accepts a firearm from Brandon Hoffman. He approaches the group on the street. He threatens them as he approaches and he fires his weapon. And [Hoffman] was present and there for all of that. He wasn't someone on the street or in a nearby apartment who came out at the moment that [the shooting started]. He saw everything. He heard everything. He agreed with law enforcement when they shared their observations that Bryce McFarland looked pissed.

The jury convicted Hoffman as charged. The trial court sentenced him to 183 months' imprisonment and 36 months of community custody. And it imposed a $500 VPA and $100 DNA collection fee.

Hoffman appeals.

ANALYSIS

Hoffman argues the trial court erred by admitting testimony that McFarland used a racial slur to describe Barquet during a police interview and by giving a first aggressor jury instruction. He also argues that the prosecutor committed misconduct in closing argument and that the court erred by imposing a VPA and DNA collection fee. We address each argument in turn.

1. Evidence of McFarland's Racial Slur

Hoffman argues the trial court erred by allowing Detective Wheeler to testify that McFarland used a racial slur to describe Barquet in a police interview hours after the incident. He contends the evidence was irrelevant hearsay, unfairly prejudicial, and not harmless. The State disagrees, arguing the trial court properly admitted the evidence and, regardless, any error was harmless. We agree with the State that any error was harmless.

"Hearsay" is a statement other than one made by the declarant while testifying offered to prove the truth of the matter asserted. ER 801(c). A

5

statement offered to show the declarant's state of mind is not hearsay.  *See State v. Johnson*, 61 Wn. App. 539, 545, 811 P.2d 687 (1991).  But to be admissible, the declarant's state of mind must be "relevant to a material issue in the case."  *Id.*  Evidence is relevant if it tends "to make the existence of any fact of consequence more probable or less probable than it would be without the evidence."  *State v. Darden*, 145 Wn.2d 612, 624, 41 P.3d 1189 (2002); ER 401.  Irrelevant evidence is inadmissible.  ER 402.

We review a trial court's decision to admit evidence for abuse of discretion.  *State v. Gunderson*, 181 Wn.2d 916, 922, 337 P.3d 1090 (2014).  A court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds.  *Id.*  We will reverse an evidentiary error only if it results in prejudice.  *State v. Neal*, 144 Wn.2d 600, 611, 30 P.3d 1255 (2001).  "An error is prejudicial if, 'within reasonable probabilities, had the error not occurred, the outcome of the trial would have been materially affected.' "  *Id.* (quoting *State v. Smith*, 106 Wn.2d 772, 780, 725 P.2d 951 (1986)).  Improperly admitted evidence is harmless if it is of minor significance in relation to the evidence as a whole.  *Id.*

Here, we need not decide whether the court erred by admitting McFarland's out-of-court statement because any error is harmless.  Detective Wheeler's testimony about the racial slur was brief.  The prosecutor asked Detective Wheeler only if McFarland "use[d] a racial slur to describe Joshua Barquet when describing the incident."  And Detective Wheeler responded,

"Yes." The prosecutor elicited no other testimony on the subject, nor did she mention the statement in closing argument.

Further, the trial court limited the jury's consideration of the testimony to assessing McFarland's state of mind. It instructed the jury:

> Certain evidence has been admitted in this case for specific purposes, including evidence related to Bryce McFarland's state of mind.
> This evidence consists of testimony from Detective Benjamin Wheeler regarding a racial slur used by Bryce McFarland while discussing the incident. This evidence and testimony may be considered by you for purposes of assessing the [s]tate of mind of Bryce McFarland only. Any evaluation of this evidence during your deliberations must be consistent with this instruction.

We presume the jury follows the trial court's instructions. *State v. Mohamed*, 186 Wn.2d 235, 241, 375 P.3d 1068 (2016).

Because the evidence consisted of brief testimony over the course of a three-week trial and the trial court limited its purpose to show McFarland's state of mind, we are not convinced that any error materially affected the outcome of the trial.

2. First Aggressor Jury Instruction

Hoffman argues the trial court erred by giving a first aggressor instruction because it "erroneously deprived" him of his self-defense claim. Specifically, he argues there is insufficient evidence to support the instruction because the evidence shows that he made only a single aggressive act, rather than engaged in a course of aggressive conduct, and that any inciting conduct on his part was limited to words. We disagree.

Whether the State produced sufficient evidence to support a first aggressor instruction is a question of law we review de novo. *State v. Stark*, 158 Wn. App. 952, 959, 244 P.3d 433 (2010). In making that determination, we view the evidence in a light most favorable to the party that requested the instruction. *State v. Bea*, 162 Wn. App. 570, 577, 254 P.3d 948 (2011).

A "first aggressor" instruction informs the jury that the State may disprove self-defense "by proving beyond a reasonable doubt that the defendant provoked the need to act in self-defense." *State v. Grott*, 195 Wn.2d 256, 268, 458 P.3d 750 (2020). A first aggressor cannot claim self-defense because " 'the aggressor's victim, defending himself against the aggressor, is using lawful, not unlawful force; and the force defended against must be unlawful force, for self-defense.' " *State v. Riley*, 137 Wn.2d 904, 911, 976 P.2d 624 (1999) (quoting 1 WAYNE R. LaFAVE & AUSTIN W. SCOTT, JR., SUBSTANTIVE CRIMINAL LAW § 5.7, at 657-58 (1986)). A first aggressor instruction is appropriate when (1) the jury can reasonably determine the defendant provoked the fight, (2) there is conflicting evidence about whether the defendant's conduct provoked the fight, or (3) the evidence shows the defendant made the first move by drawing a weapon. *Stark*, 158 Wn. App. at 959. But a single aggressive act that was the sole basis for the charge cannot support a first aggressor instruction. *Grott*, 195 Wn.2d at 272. Nor do "[w]ords alone" amount to "sufficient provocation" for a first aggressor instruction. *Riley*, 137 Wn.2d at 910-11.

Here, the trial court instructed the jury:

> No person may, by any intentional act reasonably likely to provoke a belligerent response, create a necessity for acting in self-

8

defense or defense of another and thereupon kill another person. Therefore, if you find beyond a reasonable doubt that the defendant was the aggressor, and that the defendant's acts and conduct provoked or commenced the fight, then self-defense or defense of another is not available as a defense. Words that do not constitute a threat are not adequate provocation for the defendant to be the aggressor.

Sufficient evidence supports the instruction. The record shows that Hoffman engaged in an aggressive course of conduct involving more than just his words. He walked several yards down the alley closely behind McFarland, who was acting aggressively, and approached the men on 4th Ave. SW. He brought a handgun that he visibly moved from his back pocket to his front pocket as he advanced toward the group. And he threatened the group, saying, " 'I'll beat the brakes off you right now, like, but you guys gotta go.' "

The trial court did not err by giving a first aggressor jury instruction.

3. <u>Prosecutorial Misconduct in Closing Argument</u>

Hoffman argues the prosecutor committed misconduct in closing argument by telling the jury it "could impute Mr. McFarland's acts and conduct on Mr. Hoffman and reject his claim of self-defense." We disagree.[6]

Prosecutors have " 'wide latitude' " in closing argument. *State v. Crossguns*, 199 Wn.2d 282, 296, 505 P.3d 529 (2022) (quoting *In re Pers. Restraint of Glasmann*, 175 Wn.2d 696, 704, 286 P.3d 673 (2012)). Still, their argument must be based on the evidence and not misstate the applicable law. *Id.* at 296-97. And they may not mislead the jury by misstating the evidence.

---

[6] As much as Hoffman argues the prosecutor committed misconduct by asking the jury to impute McFarland's "racist words" onto Hoffman, that argument also fails. The prosecutor did not reference McFarland's racial slur in closing argument.

*State v. Markovich*, 19 Wn. App. 2d 157, 170, 492 P.3d 206 (2021). We consider a prosecutor's arguments "in the context of the case, the arguments as a whole, the evidence presented, and the jury instructions." *State v. Slater*, 197 Wn.2d 660, 681, 486 P.3d 873 (2021). It is the defendant's burden to show that "in the context of the record and all of the circumstances of the trial, the prosecutor's conduct was both improper and prejudicial." *Glasmann*, 175 Wn.2d at 704.

Hoffman argues the prosecutor "deliberately circumvented" the court's rulings prohibiting the State from casting Hoffman as McFarland's accomplice.[7] He claims the prosecutor told the jury it could "impute" McFarland's conduct onto Hoffman. But Hoffman mischaracterizes the prosecutor's argument.

Hoffman successfully sought a jury instruction in support of his claim that he was defending McFarland. The trial court instructed the jury:

> One who acts in defense of another, reasonably believing the other to be the innocent party and in danger, is justified in using force necessary to protect that person even if, in fact, the person whom the actor is defending is the aggressor.

Then, in closing argument, the prosecutor argued that Hoffman could not have reasonably believed McFarland was an innocent party. The prosecutor said:

> I'm going to spend almost no time at all on the question of defense of others for a very simple reason. I would argue that under no circumstances, in viewing all of this evidence, could Bryce McFarland be identified as an innocent party. He chases after Joshua Barquet. He readily accepts a firearm from Brandon Hoffman. He approaches the group on the street. He threatens them as he approaches and he fires his weapon. And [Hoffman] was present and there for all of that. He wasn't someone on the street or in a nearby apartment who came out at the moment that

---

[7] During the State's opening statement, the trial court sustained Hoffman's objection to the State's use of the word "accomplice." And the court later refused to grant the State's proposed jury instruction defining "accomplice."

> [the shooting started]. He saw everything. He heard everything. He agreed with law enforcement when they shared their observations that Bryce McFarland looked pissed.

In other words, the prosecutor argued that Hoffman could not have acted in defense of McFarland because he knew McFarland was not an innocent party. Hoffman knew that McFarland was acting aggressively and provoking the other men. So, viewed in context, the prosecutor did not tell the jury it could "impute" McFarland's conduct onto Hoffman, and her argument was a proper response to Hoffman's theory of the case.

The prosecutor did not commit misconduct during closing argument.

4. <u>VPA and DNA Collection Fee</u>

Hoffman argues and the State concedes that we should remand for the trial court to strike the $500 VPA and $100 DNA collection fee from his judgment and sentence. We agree.

The court sentenced Hoffman on June 16, 2023. It imposed the VPA and DNA collection fee, which were mandatory at the time. Less than a month later on July 1, 2023, an amendment to RCW 7.68.035 took effect, providing that the court "shall not impose the [VPA] under this section if the court finds that the defendant, at the time of sentencing, is indigent as defined in RCW 10.01.160(3)." LAWS OF 2023, ch. 449, § 1; RCW 7.68.035(4). The legislature also amended former RCW 43.43.7541 (2018) to eliminate the previously mandated $100 DNA collection fee. LAWS OF 2023, ch. 449, § 4. Now, on a defendant's motion, the court must waive any DNA collection fee imposed before July 1, 2023. RCW 43.43.7541(2).

11

The State concedes the current RCW 7.68.035(4) applies to Hoffman because he was indigent at sentencing and the amendment took effect while his appeal was pending. *See State v. Ellis*, 27 Wn. App. 2d 1, 16, 530 P.3d 1048 (2023) (holding that although an amendment took effect after the defendant's resentencing, it applied to the defendant because his case was on direct appeal), *review granted*, 4 Wn.3d 1009, 564 P.3d 547 (2025). It also concedes that RCW 43.43.7541(2) applies because, again, Hoffman's case was pending on direct appeal at the time of the DNA collection fee amendment. We accept the State's concessions.

We affirm Hoffman's conviction but remand for the trial court to strike the VPA and DNA collection fee from his judgment and sentence.

_____, ACJ

WE CONCUR:

_____
Díaz, J.

_____
Chung, J.